1  GUILLERMO MARRERO (Bar No. 099056)
   JOSHUA J. RICHMAN (Bar No. 243147)
2  **INTERNATIONAL PRACTICE GROUP**
   A Professional Corporation
3  1350 Columbia Street, Suite 500
   San Diego, California  92101
4  Tel (619) 515-1480
   Fax (619) 515-1481
5  gmarrero@ipglaw.com
   jrichman@ipglaw.com
6
   Attorneys for Plaintiffs
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10  SINDICATO DE EMPLEADOS Y                    Case No. 07 CV 2365
    TRABAJADORES DE LA INDUSTRIA,
11  EL CAMPO Y EL COMERCIO DEL
    ESTADO 29 C.R.O.M., a Mexican labor         **MEMORANDUM IN SUPPORT OF**
12  union, and  SINDICATO NUEVA                 **PLAINTIFFS' MOTION FOR A**
    GENERACION DE TRABAJADORES                  **TEMPORARY RESTRAINING ORDER AND**
13  DE BAJA CALIFORNIA C.R.O.C., a              **PRELIMINARY INJUNCTION**
    Mexican labor union,
14
                Plaintiffs,
15
         v.
16
    CREDIT MANAGERS ASSOCIATION
17  OF CALIFORNIA, INC., dba CMA
    BUSINESS CREDIT SERVICES, a
18  California non-profit corporation,

19              Defendant.

20

21

22

23       Plaintiffs SINDICATO DE EMPLEADOS Y TRABAJADORES DE LA INDUSTRIA,

24  EL CAMPO Y EL COMERCIO DEL ESTADO 29 C.R.O.M., a Mexican labor union

25  ("ESTADO 29"), and  SINDICATO NUEVA GENERACION DE TRABAJADORES DE BAJA

26  CALIFORNIA C.R.O.C., a Mexican labor union ("NUEVA GENERACION"), respectfully

27  submit this Memorandum in support of their Motion for Temporary Restraining Order and

28  Preliminary Injunction.

INTERNATIONAL
PRACTICE GROUP

# I.

## INTRODUCTION

This motion seeks to freeze certain monies currently in the possession and control of Defendant CREDIT MANAGERS ASSOCIATION OF CALIFORNIA, INC. dba CMA BUSINESS CREDIT SERVICES ("CMA") until such later time as the rightful owner to those monies can be conclusively adjudicated. Specifically, Plaintiffs seek an order restraining CMA from paying out any of $896,389.81 to (1) creditors of either FlexTrim California, Inc or FlexTrim North Carolina, Inc. (the "FlexTrim Entities"), (2) the Receiver appointed by a California Family Law Court to take possession and control over certain assets alleged to form part of the marital community estate of Allen and Mary Kay Jones[1], or (3) anybody else claiming an interest to the funds vis a vis the FlexTrim Entities; or in the alternative, an order requiring that CMA deposit $896,389.81 into the Court until the parties rights to that money can be determined.

# II.

## STATEMENT OF FACTS

On or about May 21, 2007, the FlexTrim Entities commenced a common law bankruptcy proceeding and executed a General Assignment whereby they assigned their business assets to Defendant CMA for liquidation and payment of creditor claims. (See General Assignment Agreements attached as Exhibit A to the Declaration of Joshua J. Richman (the "Richman Decl.").) Sometime subsequent to May 21, 2007, CMA liquidated those business assets and now holds a significant lump sum of cash that is slated for the payment of creditor claims. (See ¶¶3-7 of the Declaration of Michael L. Jonich in Support of Receiver's Motion for Approval of Letter Agreement with CMA, Etc. attached as Exhibit B to the Richman Decl.)

Two Mexican companies, Alissimo, S.A. de C.V. ("Alissimo") and Resinas Laguna, S.A. de C.V. ("Resinas Laguna") are former vendors of the FlexTrim Entities and are major creditors

---

[1] The Family Law Court referred to is the Superior Court of the State of California, County of San Bernardino, Case No. SBFSS64717.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION

1    entitled to payment of at least $896,389.81 from the proceeds of the liquidation.[2]  Both Alissimo

2    and Resinas Laguna followed the instructions of CMA and submitted timely proofs of claim.[3]

3          Allen and Mary Kay Jones are two individuals who were formerly married.  On April 3,

4    2002, Mr. Jones commenced a dissolution proceeding in the Superior Court of the State of

5    California, County of San Bernardino, Case No. SBFSS64717 (the "Family Law Court" or

6    "Family Law Action").  On May 22, 2007, the Family Law Court entered an Order Appointing

7    Receiver and Directing Certain Other Matters (the "May 22 Order") whereby a man by the name

8    of Dennis M. Murphy was appointed temporary receiver of certain entities and their subsidiaries

9    and affiliates which were alleged to form part of the Jones marital community estate. (See May 22

10   Order attached as Exhibit D to the Richman Decl.)

11         Alissimo and Resinas Laguna were joined in the May 22 Order (See Id. at p.2.) without

12   notice, opportunity to object or any due process.  (Declaration of Jose Corral ("Corral Decl."),

13   ¶15; Declaration of Francisco Elorza ("Elorza Decl."), ¶15.)  In fact, the first time that either

14   company received notice of the proceeding against them was when they received written

15   notification from their banks that their accounts had been frozen pursuant to the May 22 Order of

16   the Family Law Court.  (Id.)  Around that same time, the Receiver took possession and control of

17   Alissimo and Resinas Laguna's warehouse in San Ysidro, California again without legal process,

18   notice or due process and in total disregard of the rights of these Mexican corporate citizens.

19   (Id.)  Neither company was ever served process, given an opportunity to respond or defend itself

20   _____

21   [2] The $896,389.91 is an account receivable of Alissimo and Resinas Laguna stemming from the
     manufacture and sale by those companies of polyurethane resin molds to the FlexTrim Entities
     that the FlexTrim Entities never paid for.  The FlexTrim Entities were the major customer of
22   Alissimo and Resinas Laguna (Declaration of Jose Corral, ¶9; Declaration of Francisco Elorza,
     ¶9.)

23   [3] Alissimo submitted one proof of claim to FlexTrim North Carolina, Inc. for $98,613.91 and
24   another to FlexTrim California, Inc. for $195,064.16.  Both Alissimo proofs of claim are attached
     as Exhibit C to the Richman Decl.

25   Resinas Laguna submitted one proof of claim to FlexTrim North Carolina, Inc. for $385,221.21
     and another to FlexTrim California, Inc. for $217,490.53.  Both Resinas Laguna proofs of claim
26   are attached as Exhibit D to the Richman Decl.

27

28

INTERNATIONAL
PRACTICE GROUP    MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION

1  from the allegations in the divorce proceeding or to prepare its business and customers for the

2  immediate and sudden shut down of their operations.  (Corral Decl. ¶15; Elorza Decl. ¶15.)

3  Plaintiffs ESTADO 29 and NUEVA GENERACION are Mexican labor unions whose

4  constituent members are the employees of Alissimo and Resinas Laguna respectively in Baja

5  California, Mexico. (Declaration of Edgar Pena ("Pena Decl."), ¶¶3, 8.)  The employees of both

6  companies are owed significant sums for unpaid wages and benefits by these companies under

7  Mexican Labor law. (Pena Decl. ¶¶4, 9.)  The employee claims remain unpaid because Alissimo

8  and Resinas Laguna's operations have been unjustly seized by the Receiver and because the

9  FlexTrim Entities have failed to pay approximately $896,389.81 for goods manufactured, sold

10  and delivered by Alissimo and Resinas Laguna to the FlexTrim entities.  (Pena Decl. ¶¶7, 12;

11  Corral Decl. ¶6; Elorza Decl. ¶6.)

12  On December 13, 2007, Plaintiff labor unions ESTADO 29 and NUEVA GENERACION

13  filed a petition with the Junta Local de Conciliacion y Arbitraje de Tijuana, the state labor court

14  of Baja California in Tijuana (the "Mexican Court"), and received an order temporarily freezing

15  all the assets of Alissimo and Resinas Laguna, wherever located, in order to satisfy the payment

16  of the wages (Declaration of Mexican Attorney Roberto Quijano ("Quijano Decl."), ¶¶3, 4, 9.)

17  The Mexican Constitution and the Mexican Labor Code create constitutional protection for the

18  rights of employees and provide that employees have preferential and superior rights for the

19  payment of wages, salaries and accrued benefits over all other creditors – secured or unsecured –

20  and even the Mexican government itself.  (Quijano Decl. ¶10.)  Mexican labor law further

21  provides that employees who are due salaries, wages and benefits may file a claim before the

22  Mexican labor board and once filed their claims are perfected and take legal precedence over all

23  other claims. (Quijano Decl. ¶11.)  Therefore, as a result of the petition filed by the labor unions

24  in Tijuana and the Mexican Court's order, the employees have a direct financial interest, as

25  authenticated by the Labor Board's interim order, in all assets of their employers Alissimo and

26  Resinas Laguna and in particular the rights of both of these companies to the receivable owed

27  those companies by Defendant CMA. (Supplemental Declaration of Roberto Quijano, ¶3.)

28  The rights of the employee Plaintiffs are threatened by recent actions undertaken by the

-4-                                        07 CV 2365

MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION

1  Receiver in the Family Law Action.  The Receiver has filed a motion with the San Bernardino

2  Superior Court (the "Receiver's Motion") requesting that the court approve a "letter agreement"

3  that is nothing other than a thinly disguised attempt to circumvent the rights of Alissimo and

4  Resinas Laguna.  According to the terms of the proposed agreement, CMA is to pay certain

5  "undisputed claims" of creditors of the FlexTrim Entities and then pay any remaining amounts to

6  the Receiver.  (See Memorandum of Points and Authorities in Support of Receiver's Motion for

7  Approval of Letter Agreement with CMA, Etc. at p.1, attached as Exhibit E to the Richman

8  Decl.)  Notably absent from the list of undisputed claims is the account receivable for goods sold

9  and delivered by Alissimo and Resinas Laguna to the FlexTrim Entities despite their having filed

10  timely proof of claims.  Instead, their claims are classified as being in "the possession and

11  control" of the Receiver by virtue of the May 22 Order.  In simple terms, the Receiver's Motion

12  seeks to redirect these funds that are admittedly owed to Alissimo and Resinas Laguna into its

13  own account with out the faintest trace of fairness or due process.  The Receiver's Motion is

14  scheduled to be heard on <u>December 21, 2007, at 8:30 a.m.</u>  If Defendant CMA is not restrained

15  before then and is allowed to pay the Receiver the funds, Plaintiffs will be irreparably injured

16  because it will be left without a remedy as the last remaining liquid asset of Alissimo and Resinas

17  Laguna will be redirected and spent by the Receiver to satisfy the claims of Mary Kay Jones.

18       Under these circumstances, immediate and definitive action is required in order to

19  preserve the status quo, provide a fair opportunity for all interested parties to present their claims

20  and have those claims lawfully considered and ruled upon in a fair and impartial manner

21  consistent our judicial notions of due process and fair play.  Accordingly,  Plaintiffs respectfully

22  request that this Court immediately issue a temporary restraining order and set a hearing date for

23  an order to show cause re: preliminary injunction to preclude Defendant CMA from paying out or

24  otherwise assigning away the right to any of the $896,389.81 claimed by Plaintiffs ESTADO 29

25  and NUEVA GENERACION through Alissimo and Resinas Laguna.

26  ////

27  ////

28  ////

-5-                    07 CV 2365

MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION

1

**III.**

2

**ARGUMENT**

3

4  **A.    THE COURT SHOULD TEMPORARILY RESTRAIN AND PRELIMINARILY ENJOIN DEFENDANT CMA FROM PAYING OUT OR OTHERWISE ASSIGNING AWAY ANY OF THE $896,389.81 THAT IT IS CURRENTLY IN POSSESSION AND CONTROL OF.**

5

6        Federal Rule of Civil Procedure 65 is the primary authority for obtaining a temporary

7  restraining order and/or preliminary injunction.   A party who demonstrates either (1) a

8  combination of probable success and the possibility of irreparable harm, or (2) that serious

9  questions are raised and the balance of hardship tips in its favor, may obtain preliminary

10  injunctive relief. Arcamuzi v. Continental Airlines, Inc., 819 F.2d 935, 938 (9th Cir. 1987).  The

11  required degree of irreparable harm increases as the probability of success decreases and vise

12  versa. Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir. 1985).

13  The moving party must demonstrate a fair chance of success on the merits, or questions serious

14  enough to require litigation.  Sports Form, Inc. v. United Press Int'l, Inc., 686 F.2d 750, 753 (9th

15  Cir. 1982).

16        The proponent of preliminary injunctive relief must demonstrate a significant threat of

17  irreparable injury.  Oakland Tribune, supra.  Irreparable injury cannot be shown where the loss or

18  depravation pending trial is reparable; if the plaintiff can be made whole in the event of success at

19  trial, irreparable injury is not present.  Napa Valley Publ. Co. v. City of Calistoga, 225 F. Supp.2d

20  1176, 1181 (N.D. Cal. 2002).  "Irreparability of injury pending trial turns on the nature of the loss

21  and the ability of the court to make the plaintiff whole after the trial; it does not necessarily turn

22  on the meritoriousness of the plaintiff's legal claim."  Id.

23

24  **1.    Plaintiffs Will Likely Prevail on the Merits of Their Claims and Irreparable Injury is Almost Certain in this Case.**

25        Alissimo and Resinas Laguna are creditors of the FlexTrim Entities.  Plaintiffs' Complaint

26  alleges four separate theories of recovery:   breach of contact, account stated, goods sold &

27  delivered and equitable relief, each of which is premised on the same underlying facts, i.e., that

28  these companies manufactured and delivered goods and services for the benefit of the FlexTrim

MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION

1   Entities, that the goods and services were received without objection and that a legal liability

2   arose to pay the invoices generated by these companies. (Corral Decl. ¶¶5-8; Elorza Decl. ¶¶5-8;

3   See also Exhibits C and D to Richman Decl.)  At no time have the FlexTrim Entities or CMA

4   disputed or questioned the legitimacy of the debt.  The assets of FlexTrim are in the possession

5   and control of CMA and pursuant to the terms of the General Assignment are to be paid out to

6   FlexTrim creditors.  (See General Assignment attached as Exhibit A to Richman Decl.)

7        By virtue of the Mexican Proceeding and Mexican labor law, Plaintiffs ESTADO 29 and

8   NUEVA GENERACION, who represent the employees of Alissimo and Resinas Laguna

9   respectively, have preferential rights under a lawful Mexican Labor Court order to the assets of

10  Alissimo and Resinas Laguna and in particular their rights to collect the receivable that has been

11  wrongfully retained by CMA.  (Supplemental Declaration of Roberto Quijano, ¶3.)

12       Irreparable injury is near certain in this case because the fate of the CMA receivable will

13  be determined this Friday, December 21, 2007, on the hearing on the Receiver's Motion in the

14  Family Law Court in San Bernardino.  The Family Law Court improperly exercised jurisdiction

15  against Alissimo and Resinas Laguna in the May 22 Order, which unlawfully included those

16  companies as assets of the Jones marital estate without regard to the actual share ownership of the

17  entities.  The May 22 Order also ignored the content of their registered Articles of Incorporation

18  and Bylaws (which are public documents in Mexico).  The Family Law Court appears to have

19  given no consideration to Mexican corporate law as applicable to the entities and never provided

20  the companies any opportunity to present their objections to what appears to be a private marital

21  dissolution involving a husband and wife undergoing a divisive divorce. Based on the May 22

22  Order, the Receiver has taken possession and control of the companies' assets without the

23  slightest attempt at due process and now seeks to take control of and disburse the single largest

24  remaining asset of these companies – the CMA receivable.  If the Receiver is left to continue his

25  current course, the Mexican employees of these Mexican companies whose rights are inviolate

26  under Mexico's constitution and whose claim to the CMA receivable has been authenticated by

27  the Mexican Labor Court will be left without any remedy to recover their unpaid wages.

28  ////

-7-                                07 CV 2365

1

2        **2.    Plaintiffs' Claims Uncover Due Process Violations and an Unsound Court Order That Resulted in the Unwarranted Freeze of Assets.**

3        Alissimo and Resinas Laguna were joined in the Jones marital dissolution proceeding

4  without ever receiving prior notice and without ever being given an opportunity to defend

5  themselves.  (Corral Decl. ¶15; Elorzo Decl. ¶15.)  Alissimo and Resinas Laguna first notification

6  of the pending U.S. proceeding was when they were notified by their banks that their U.S. bank

7  accounts had been frozen.  In addition, the Receiver physically visited and took possession and

8  control of their warehouse in San Ysidro, California without prior notification. (Id.)   All of these

9  events took place without notification, without legal service and without the due process upon

10 which our system of justice relies.

11       Setting aside the notions of  due process and fundamental fairness, a cursory review of the

12 "facts" that were relied upon by the Family law court reveals the major assumptions and flawed

13 foundation that underlies the May 22 Order.  In support of the finding that Alissimo and Resinas

14 Laguna were part of the marital estate the Family Law Court relied upon the following: (1) the

15 declaration of Charlotte Reith a U.S. Certified Public Accountant who did not personally review

16 the corporate records or corporate minutes of Alissimo or Resinas Laguna or ever speak with any

17 of their registered shareholders, officers or directors; (2) the declaration of Mary Kay Jones'

18 divorce attorney Richard Granowitz that is rife with vague, conclusory and speculative assertions

19 and allegations which are not substantiated and which would not be admissible as evidence; and

20 (3) the declaration of the ex-wife Mary Kay Jones (an interested and biased party) which

21 interestingly enough is devoid of any information or allegations as to  the ownership of Alissimo

22 or Resinas Laguna.  (Richman Decl. ¶8.)

23       The Family Law Court did not consider Mexican corporate law, the legal significance of

24 the Articles or Incorporation of Alissimo or Resinas Laguna, the names of the registered

25 shareholders, officers or directors or any financial data concerning the companies.  The list of

26 what was not considered dwarfs that which was relied upon.  Neither Alissimo nor Resinas

27 Laguna were notified of the pending actions or given any opportunity to present their position.

28

                                                        -8-                           07 CV 2365

1    The breadth and devastating scope of the May 22 Order, while easy to comprehend, remains

2    legally incomprehensible when viewed against the backdrop of our notions of due process,

3    fairness and the ability to be heard before being deprived of property.

4    **3.      The Balance of Hardships Falls in Plaintiffs' Favor**

5    A temporary restraining order against Defendant CMA will have virtually no adverse

6    impact on CMA.  CMA is in the business of acting as an assignee for the benefit of creditors and

7    the only effect that a TRO will have will be to force CMA to either (1) hold onto the receivable or

8    (2) pay it into this Court pending resolution of the merits of the case.

9    Plaintiffs, however, will suffer immediate and extreme hardship if the Court does not

10    restrain CMA.  Pursuant to the Receiver's Motion currently scheduled for hearing on Friday,

11    December 21, 2007, at 8:30 a.m. in the Family Law Court, the Receiver is requesting that CMA

12    pay out some small creditors and then assign him the remaining funds that Plaintiffs would

13    otherwise be entitled to.  (See Memorandum of Points and Authorities in Support of Receiver's

14    Motion attached as Exhibit E to Richman Decl.)   If the Receiver's Motion is granted and this

15    TRO in not in place, then CMA will be free to send the Receiver the funds it holds without

16    consideration to the effect such an action would have on the rights of Plaintiffs, Alissimo or

17    Resinas Laguna.  Further, the Receiver is interested and compensated through the Family Law

18    Action and will be partial to maximizing the value of the marital community estate at the expense

19    of the employees of Plaintiffs that are rightfully entitled to the money.

20    Because the balance of hardships falls in Plaintiffs' favor, the Court should grant its

21    motion for TRO.

22    **4.      Defendant CMA Will Have Advance Notice of This Proceeding.**

23    Plaintiffs filed the Complaint on December 18, 2007.  That same day, Plaintiffs contacted

24    the chambers of Judge Napoleon Jones to set a time for hearing this motion as soon as

25    practicable. (Richman Decl. ¶9.)  Plaintiffs were informed that Judge Jones would be unavailable

26    to hear this motion this week and were informed that upon the filing of this motion, Judge Jones

27    would recuse himself from the case and the matter would be transferred to a different department.

28    (Id.)  On December 19, 2007, Plaintiffs learned that Judge Thomas J. Whelan had been reassigned

MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION

1   to the case but that he would be unable to hear the motion until after December 27, 2007.  (Id.)

2   As of the time of filing of this motion, the Court was in the process of locating a judge who could

3   hear the motion by Thursday.  (Id.)

4        Plaintiffs served notice of this motion on Defendant by facsimile on December 19, 2007,

5   at 11:15 a.m.  (Id.)

6        **5.        Plaintiffs Request that the Court Accept a Direct Deposit Made Payable to the**

7   **Court to Satisfy the Security Requirement of Fed. R. Civ. Proc. § 65(c).**

8        Fed. R. Civ. Proc. § 65(c) requires that an applicant for injunctive relief give security in a

9   sum the court deems proper "for the payment of such costs and damages as may be incurred or

10  suffered by any party who is found to have been wrongfully enjoined or restrained."  Because

11  Plaintiffs are Mexican citizens, they have been unable to easily procure a simple surety bond from

12  a surety company.  (Richman Decl. ¶10.)

13       Plaintiffs request that this Court permit them to deposit with the Court an amount of

14  security sufficient to satisfy the requirements of Fed. R. Civ. Proc. § 65(c) in lieu of obtaining a

15  traditional surety bond.  Plaintiffs request that the amount be immediately refundable to the

16  depositor in the event that the case settles or results in a judgment in favor of Plaintiffs.  Because

17  of the nature of the Plaintiffs' claim and the unlikelihood that CMA will suffer hardship,

18  Plaintiffs request that the Court require that Plaintiffs post no more than $5,000 to comply with

19  Fed. R. Civ. Proc. §65(c).

20                                        **IV.**

21                                  **CONCLUSION**

22       It is critical that CMA be immediately restrained from paying out any of the $896,389.81

23  until the rights of the parties are adjudicated.  Those funds should be paid into the Court until

24  rightful ownership is determined.  The Receiver's Motion scheduled for this Friday December 21,

25  2007, if granted, will permit CMA to pay out the funds to the Receiver and will unjustly become

26  incorporated into the Family Law Action that improperly joined Alissimo and Resinas Laguna

27  from the beginning.  If CMA receivable is not safeguarded, Plaintiffs will be left with no remedy

28  and no recourse for the payment of their wages and benefits.

INTERNATIONAL
PRACTICE GROUP

MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION

1  Dated:  December 19, 2007

2                                        Respectfully submitted,

3                                        INTERNATIONAL PRACTICE GROUP,
                                         A PROFESSIONAL CORPORATION
4                                        BY

5

6

7                                        GUILLERMO MARRERO
                                         JOSHUA J. RICHMAN
8                                        Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-                                    07 CV 2365

MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION