GUILLERMO MARRERO (Bar No. 099056)
JOSHUA J. RICHMAN (Bar No. 243147)
**INTERNATIONAL PRACTICE GROUP**
A Professional Corporation
1350 Columbia Street, Suite 500
San Diego, California  92101
Tel (619) 515-1480
Fax (619) 515-1481
gmarrero@ipglaw.com
jrichman@ipglaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINDICATO DE EMPLEADOS Y TRABAJADORES DE LA INDUSTRIA, EL CAMPO Y EL COMERCIO DEL ESTADO 29 C.R.O.M., a Mexican labor union, and  SINDICATO NUEVA GENERACION DE TRABAJADORES DE BAJA CALIFORNIA C.R.O.C., a Mexican labor union;<br><br>Plaintiffs,<br><br>v.<br><br>CREDIT MANAGERS ASSOCIATION OF CALIFORNIA, INC., dba CMA BUSINESS CREDIT SERVICES, a California non-profit corporation,<br><br>Defendant. | Case No. 07CV2365<br><br>**DECLARATION OF  JOSHUA J. RICHMAN** |

I, Joshua J. Richman, declare:

1.     I am an attorney licensed to practice law before all courts of the State of California and I am associated with the law firm International Practice Group, a Professional Corporation, attorneys of record for Plaintiffs SINDICATO DE EMPLEADOS Y TRABAJADORES DE LA INDUSTRIA, EL CAMPO Y EL COMERCIO DEL ESTADO 29 C.R.O.M., a Mexican labor union,  and     SINDICATO NUEVA GENERACION DE TRABAJADORES DE BAJA

-1-

CALIFORNIA C.R.O.C., a Mexican labor union. I have personal knowledge of the facts stated in this declaration, and if called upon to testify I could, and would, testify competently to them in a court of law.

2.    Attached hereto as <u>Exhibit A</u> is a true and correct copy of the two General Assignment Agreements reflecting assignments made by FlexTrim California, Inc. and FlexTrim North Carolina, Inc. to Defendant CMA for the benefit of the FlexTrim creditors that were attached as exhibits F and G to the Declaration of Michael L. Joncich in Support of Receiver's Motion for Approval of Letter of Agreement with CMA, Etc., filed with the San Bernardino Superior Court on or about December 13, 2007.

3.    Attached hereto as <u>Exhibit B</u> is a true and correct copy of the Declaration of Michael Joncich in Support of Receiver's Motion for Approval of Letter of Agreement with CMA, Etc., which was filed with the San Bernardino Superior Court on or about December 13, 2007.

4.    Attached hereto as <u>Exhibit C</u> are true and correct copies of two proofs of claim submitted by Alissimo, S.A. de C.V. to Defendant CMA on or about July 6, 2007, that were attached as exhibits K and L to the Declaration of Michael L. Jonich in Support of Receiver's Motion for Approval of Letter Agreement with CMA, Etc., filed with the San Bernardino Superior Court on or about December 13, 2007.

5.    Attached hereto as <u>Exhibit D</u> are true and correct copies of two proofs of claim submitted by Resinas Laguna, S.A. de C.V. to Defendant CMA on or about July 6, 2007, that were attached as exhibits M and N to the Declaration of Michael L. Jonich in Support of Receiver's Motion for Approval of Letter Agreement with CMA, Etc., filed with the San Bernardino Superior Court on or about December 13, 2007.

6.    Attached hereto as <u>Exhibit E</u> is a true and correct copy of an order entered by the San Bernardino Superior Court, in case number SBFSS64717, dated May 22, 2007.

7.    Attached hereto as <u>Exhibit F</u> is a true and correct copy of the Memorandum of Points and Authorities in Support of Receiver's Motion for Approval of Letter Agreement with CMA, filed with the San Bernardino Superior Court on or about December 13, 2007.

-2-

8.    I reviewed the papers submitted to the San Bernardino Superior Court in case no. SBFSS627717 on or around April 11, 2007, by Mary Kay Jones in support of her application for appointment of a receiver.  I found three declarations in support of the application and two supplemental declarations.  None of the declarations contained any first hand information regarding the ownership of Alissimo or Resinas Laguna.  It was evident from the declaration and supplemental declaration of Charlotte Reith, a certified public accountant, that Ms. Reith had not personally reviewed the corporate records or corporate minutes of Alissimo or Resinas Laguna or ever speak with any of their registered shareholders, officers or directors.  It was evident from the declaration and supplemental declaration of Mary Kay Jones' divorce attorney Richard Granowitz that he had no personal knowledge regarding the ownership of Alissimo or Resinas Laguna.  The declaration of Mary Kay Jones stated nothing about the ownership of Alissimo or Resinas Laguna.

9.    Plaintiffs filed the Complaint on December 18, 2007.  The case was assigned to Judge Napoleon Jones.  Plaintiffs immediately contacted the chambers of Judge Napoleon Jones to set a time for hearing this motion as soon as practicable.  Plaintiffs were informed that Judge Jones would be unavailable to hear this motion this week and were informed that upon the filing of this motion, Judge Jones would recuse himself from the case and the matter would be transferred to a different department.  On December 19, 2007, Plaintiffs learned that Judge Thomas J. Whelan had been reassigned to the case.  Plaintiffs immediately called Judge Whelan to set a date and time for hearing but learned that the Judge Whelan was unable to hear the motion until after December 27, 2007.  As of the time of filing of this motion, the Court was in the process of locating a judge who could hear the motion by Thursday.  Immediately upon receiving notice of the judge that will hear this matter and the time and place of hearing, Plaintiffs will immediately inform Defendant of same via facsimile and overnight mail.

10.    Because Plaintiffs are Mexican citizens, they have been unable to easily procure a traditional surety bond from a surety company to satisfy the security requirement of Fed. R. Civ. Proc. § 65.  That rule, however, does not mandate that a security bond be purchased but rather that security be posted for the protection and benefit of the restrained party.

DECLARATION OF JOSHUA J. RICHMAN

1    11.    Plaintiffs served notice of this motion on Defendant by facsimile on December 19,

2    2007, at 11:15 a.m.

3    I declare under penalty of perjury under the laws of the State of California that the

4    foregoing is true and correct.

5    Executed this 19th day of December, 2007 at San Diego, California.

6

7

8

9    JOSHUA J. RICHMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-



**EXHIBIT  A**

05/22/2007  00:03  90979                        FTI                              PAGE  04

Form 101 (10-94)

# GENERAL ASSIGNMENT

THIS ASSIGNMENT, Made this 21st day of May, 2007, by Flex Trim California, Inc. of 15435 Arrow Route in the City of Fontana, County of Riverside, State of California, 92335, FEDERAL TAX IDENTIFICATION NUMBER: 33-0284843, party of the first part, hereinafter referred to as Assignor, to Credit Managers Association of California, a California corporation, of Burbank, California, doing business as CMA Business Credit Services, party of the second part, hereinafter referred to as Assignee.

WITNESSETH: That said assignor, for and in consideration of the covenants and agreements to be performed by the party of the second part, as hereinafter contained, and of the sum of One Dollar ($1.00) to Assignor in hand paid by said Assignee, receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell, assign, convey and transfer unto said Assignee, its successors and assigns, in trust, for the benefit of Assignor's creditors generally, all of the property of the Assignor of every kind and nature and wheresoever situated, both real and personal, and any interest or equity therein not exempt from execution, including, but not limited to, all that certain stock of merchandise, furniture, fixtures, equipment, book accounts, books, bills receivable, cash on hand, cash in bank, deposits, patents, copyrights, trademarks and trade names, insurance policies, tax refunds, rebates, insurance refunds and claims, choses in action that are legally assignable, together with the proceeds of any existing non-assignable choses in action that may hereafter be recovered or received by the Assignor.

This assignment specifically includes and covers all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from the Assignor by the U.S. Treasury Department, and any State or local taxing agency, and the Assignor agrees to sign and execute power of attorney or all other documents as required to enable said Assignee to file and prosecute, compromise and/or settle, all such claims before the Internal Revenue Service and any State or local taxing agency, and agrees to endorse any tax refund checks relating to the prior operations of said Assignor's business and to deliver such checks to the Assignee.

Leases and leasehold interests in real estate are not included in this assignment. However, if the Assignee shall determine that the same may be assigned and also that the same has a realizable value for creditors, then the Assignor agrees that upon written demand of the Assignee, it will assign and transfer said lease or leasehold interest to said Assignee, or nominee, for administration under the terms of this general assignment.

Contracts and/or agreements between Assignor and any Labor Union, or Trade Associations, are excepted from and not included in this assignment.

The Assignor authorizes the forwarding of its mail by the U.S. Postal Department as directed by the Assignee.

Said Assignee is to receive the said property, conduct the said business, should it deem it proper, and is hereby irrevocably authorized at any time after the execution hereof to sell, lease, or otherwise dispose of said property upon such time and terms as it may see fit. Said Assignee shall use and apply the net proceeds arising from the conducting of said business and from the sale, or lease or other disposition of said property as follows:

FIRST: To deduct therefrom (or to reimburse itself with respect to) all sums which said Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under the law is entitled to priority of payment, and all expenses, including a reasonable fee (as hereinafter defined) and to its attorney, and to the attorney for the Assignor; and, in those instances where a creditors' committee has been selected at any meeting of the creditors of the Assignor (without regard to the actual amount or number of creditors present at such creditors' meeting) then a reasonable fee shall be paid to the attorney appointed by said Creditors' Committee in an amount fixed by the said creditors' committee and said Assignee.

SECOND: The balance of the proceeds then remaining shall be paid to the creditors of the Assignor, pro rata, according to the indebtedness due each of them, individually, from the Assignor.

With respect to the fees of the Assignee referred to in the aforementioned paragraph FIRST hereinabove, Assignor hereby expressly and irrevocably agrees as follows: That the term "a reasonable fee to Assignee", as used herein, is defined as, and includes the following: (a) An administration fee computed on the basis of the total monies handled in connection with this Assignment and for the assembly, inventorying, collection and liquidation of the assets assigned, in accordance with the following schedule, to wit: the greater of a minimum fee of $25,000, or a fee calculated on the following schedule shall apply:  From proceeds received from sale of assets 6% of the first $1 million received, 4% of the next $1 million  received, and 3% of proceeds in excess of $2 million. There shall be excluded from the foregoing, however, monies received or disbursed in connection with and incidental to any actual continuing operation of the business assigned, as distinguished from monies received in connection with the collection and liquidation of the assets assigned.

The Assignee shall be entitled to reimbursement of all expenses incurred as a result of its administration out of the proceeds generated therefrom.

In addition to all the foregoing fees and charges, the Assignor expressly agrees that the Assignee shall be entitled to a further fee equal to any and all interest earned and received by the Assignee on any trust and other funds in its hands and arising from this assignment.

The total of all of said fees shall be paid from the property assigned, and from all of the proceeds thereof and from any interest, income and increments and any additions thereto.

Any contract, liability, or obligation made by Assignee in connection with the administration of this agreement shall not personally bind Assignee or any of its officers, agents, or employees, but it shall obligate Assignee in its capacity as Assignee only, whether or not the Contract specifically so provides.  Assignee hereunder shall be liable only in its official capacity for reasonable care and diligence in administering the estate created by this assignment.

Assignor as to all existing creditors extends the statute of limitations upon their respective claims for a period of one year from the date hereof.

Said Assignee is also authorized and empowered to appoint such agents, field representatives, attorneys and/or accountants as it may deem necessary, and such agents and/or field representatives shall have full power and authority to open bank accounts in the name of the Assignee or its nominees or agents and to deposit assigned assets or the proceeds thereof in such bank accounts and to draw checks thereon and with the further power and authority to do such other acts and to execute such papers and documents in connection with this assignment as said Assignee may consider necessary or advisable.

IN WITNESS WHEREOF, the said parties have hereunto set their hands the day and year first above written.

By: _____ — PRESIDENT
　　　Allen A. Jones, President

CREDIT MANAGERS ASSOCIATION OF CALIFORNIA
a California corporation, doing business as
CMA BUSINESS CREDIT SERVICES

By: _____
　　　Robert J. Hoder, Vice President and Corp. Secretary

# CONSENT OF DIRECTORS TO HOLD MEETING

*Fontana, California*

*May 21, 2007*

We, the undersigned, being all of the directors of the Flex Trim California, Inc., a corporation organized under the laws of the State of California, assembled this day at the office of the Corporation at Fontana, California, do hereby consent that a meeting of said directors be held at this time and place for the transaction of such business as may come before the meeting, and waive any notice of said meeting.

_____
Allen A. Jones

# MINUTES OF THE MEETING

*Fontana, California, May 21, 2007*

At a meeting of the directors of the Flex Trim California, Inc., a corporation, held at the office of the Company at 15435 Arrow Route, Fontana, California, at 3 4/5 o'clock  M., the following directors were present:

Allen A. Jones

*The President announced that the purpose of the meeting was to consider the financial condition of the company and the advisability of making a general assignment for the benefit of creditors.*

*On motion by Allen A. Jones, seconded by Allen A. Jones, the following resolution was adopted, to-wit:*

*BE IT RESOLVED:*

*That any one of the officers of this corporation be, and he is, hereby authorized and directed by the directors of this company, in meeting assembled, to make an assignment of all assets of the corporation to Credit Managers Association of California, a California corporation, of Burbank, California, doing business as CMA Business Credit Services, for the pro rata benefit of all creditors of this corporation, and that any one officer      shall, and he is, hereby authorized and directed to execute said assignment containing such provisions as may be agreed upon between them and said Credit Managers Association of California, a California corporation, doing business as CMA Business Credit Services (Assignee), and he is also authorized and directed to execute and deliver to said Credit Managers Association of California, a California corporation, doing business as CMA Business Credit Services (Assignee), such other deeds, assignments, and agreements as may be necessary to carry this resolution into effect.*

*BE IT FURTHER RESOLVED:*

*That said assignee for the benefit of creditors be, and it hereby is, authorized to execute and file and prosecute on behalf of this corporation all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from this corporation and any one officer of this corporation be, and it is, hereby authorized and directed to make, execute and deliver in favor of such person as may be designated by the assignee for the benefit of creditors, a power of attorney on the regular printed form thereof used by the United States Treasury Department so as to authorize said attorney-in-fact to process any tax claims for it on behalf of this corporation.*

*There being no further business to come before the directors, the meeting adjourned subject to the call of the President or Vice-President.*

05/21/2007  04:37   90975  ＿  ＿                FTI.                      PAGE  05

*Allen A. Jones, President*

*I, Allen A. Jones, President of the Flex Trim California, Inc., a corporation, do hereby certify that the foregoing is a true and correct copy of the minutes of the meeting of directors held in Fontana, California, at the place and hour stated and that the resolution contained in said minutes was adopted by the directors at said meeting and the same has not been modified or rescinded.*

*Dated May 21, 2007*            _____ — PRESIDENT

                                *Allen A. Jones, President*

**CORPORATE SEAL**

# CONSENT TO ASSIGNMENT BY STOCKHOLDERS

*We, the undersigned, being owners and holders of 10,000 shares of stock, being more than 50% of the subscribed and issued stock of Flex Trim California, Inc., a corporation, do hereby give our consent to the within assignment and transfer of the property of said corporation.*

*NAME*                          *SHARES HELD*

_____          10,000
*Allen A. Jones*

_____          _____

_____          _____

*Creditors of FlexTrim Calif.*

| | | | | |
|---|---|---|---|---|
| PATTON SALES<br>909-988-0661 | ACCTS<br>RECEIVABLE | P.O. BOX 273<br>ONTARIO CA. 91762 | METAL PF | |
| BURTEC WASTE<br>800-998-8774 | ACCTS<br>RECEIVABLE | P.O. BOX 6766<br>BUENA PARK CA<br>90622 | WASTE F | |
| PACIFIC MUTUAL DOOR | ACCTS<br>RECEIVABLE | | OVERPAYMENT<br>ACCOUNT REC | $774.17 |
| BELTRAN HANDRAIL | ACCTS<br>RECEIVABLE | | OVERPAYMENT<br>ACCOUNTS REC | $748.24 |
| HERCULES FREIGHT<br>323-263-6100 | ACCTS<br>RECEIVABLE | 7701 W. 95TH<br>HICKORY HILLS IL<br>60457 | FREIGHT | $554.39 |
| FORD MOTOR CREDIT<br>909-822-4401 | ACCTS<br>RECEIVABLE | P.O. BOX 7172<br>PASADENA CA<br>91109 | AUTO PAYMENT | $475.96 |
| YOSEMITE WATER<br>909-824-2430 | ACCTS<br>RECEIVABLE | 1070 S LADENA DR<br>COLTON CA.<br>92334 | WATER SUPPLIER | $307.00 |
| WARREN BROTHERS | ACCTS<br>RECEIVABLE | | OVERPAYMENT<br>ACCOUNTS REC | $235.98 |
| XTREME PALLETS<br>909-800-1396 | ACCTS<br>RECEIVABLE | 13819 SLOVER AVE<br>FONTANA CA<br>92337 | PALLETS | $234.00 |
| DENTAL HEALTH SERVICES<br>562-695-6000 | ACCTS<br>RECEIVABLE | 3833 ATLANTIC AVE<br>LONG BEACH CA<br>90807 | MEDICAL/DENTAL | $163.10 |
| ULINE<br>800-286-5510 | ACCTS<br>RECEIVABLE | 2200 S. LAKESIDE DR<br>WUAKEGAN IL<br>60085 | MFG SUPPLIES | $162.37 |
| SOUTHERN CAL GAS<br>800-427-2000 | ACCTS<br>RECEIVABLE | P.O. BOX C<br>MONTEREY PK<br>91756 | GAS COMPANY | $144.25 |
| UNITED PARCEL SVC<br>800-742-5877 | ACCTS<br>RECEIVABLE | P.O. BOX 894820<br>LOS ANGELES CA<br>90189 | FREIGHT | $28.04 |

| VENDOR LIST | CONTACT | ADDRESS | NATURE | DEBT |
|---|---|---|---|---|
| COMPANY | | | | |
| SACRAMENTO | | | | |
| | | | | |
| PROTECTION ONE 800-438-4357 | A/R | PO BOX 5714 CAROL STREAM, IL 60197 | ALARM | 120.00 |
| HOFMANN PROPERTIES | | SACRAMENTO | | 25.00 |

| VENDOR LIST FLEXTRIM | CONTACT | ADDRESS | NATURE | DEBT |
|---|---|---|---|---|
| PAPALION INC 909-748-6578 | S. SHEARER | P.O. BOX 2260 REDLANDS CA | INTER COMPANY | $263,466.99 |
| RESINAS LAGUNA 619-955-6862 | FRANCISCO | 482 W. SAN YSIDRO SAN YSIDRO CA. 92173 | RESIN SUPPLIER | $128,546.25 |
| ALISSIMO | JOSE CORRAL | 416 W SAN YSIDRO SAN YSIDRO CA. 92173 | PRODUCT SUPPLIER | $56,987.07 |
| FEDERAL EXPRESS 800-622-1147 | SHARON CALDWAL | P.O. BOX 7221 PASADENA CA 91109 | SHIPPING | $17,742.88 |
| HERITAGE CONTAINER 951-360-1900 | ACCTS RECEIVABLE | P.O. BOX 605 MIRA LOMA CA 91752 | CONTAINERS | $4,668.52 |
| UNITED REPRESENTATIVES 713-807-0136 | ACCTS RECEIVABLE | P.O. BOX 27287 HOUSTON TX 77227 | SALES REPS COMMISSION | $2,712.38 |
| HOME DEPOT 800-685-6691 | ACCTS RECEIVABLE | P.O. BOX 6029 THE LAKES NV 88901 | SUPPLIES | $2,200.84 |
| PACIFICARE 800-591-9911 | ACCTS RECEIVABLE | DEPT NO. 1346 LOS ANGELES CA 90088 | HEALTH CARE | $1,916.89 |
| OLD DOMINION FREIGHT | ACCTS RECEIVABLE | P.O. BOX 79008 CITY OF INDUSTRY 91716 | FREIGHT | $1,888.61 |
| GOLDEN EAGLE INS | ACCTS RECEIVABLE | P.O. BOX 85834 SAN DIEGO CA 92186 | WORKERS COMPENSATION | $1,118.53 |
| JOHN MOSS 253-858-2986 | JOHN MOSS | 5005 86TH AVE GIG HARBOR WA 98335 | SALES REPS COMMISSIONS | $874.01 |
| MATHESON FREIGHT 916-686-4600 | ACCTS RECEIVABLE | P.O. BOX 910 ELK GROVE CA 95759 | FREIGHT | $972.66 |

05/22/2007  00:03   90979_  .90                FTI

PAGE   01

Form 101 (10-94)

# *GENERAL ASSIGNMENT*

*THIS ASSIGNMENT*, Made this 21st day of May, 2007, by Flex Trim North Carolina, Inc. of 111 Siga Drive in the City of Garner, County of Wake, State of North Carolina, FEDERAL TAX IDENTIFICATION NUMBER: 62-1859921, party of the first part, hereinafter referred to as Assignor, to Credit Managers Association of California, a California corporation, of Burbank, California, doing business as CMA Business Credit Services, party of the second part, hereinafter referred to as Assignee.

*WITNESSETH*: That said assignor, for and in consideration of the covenants and agreements to be performed by the party of the second part, as hereinafter contained, and of the sum of One Dollar ($1.00) to Assignor in hand paid by said Assignee, receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell, assign, convey and transfer unto said Assignee, its successors and assigns, in trust, for the benefit of Assignor's creditors generally, all of the property of the Assignor of every kind and nature and wheresoever situated, both real and personal, and any interest or equity therein not exempt from execution, including, but not limited to, all that certain stock of merchandise, furniture, fixtures, equipment, book accounts, books, bills receivable, cash on hand, cash in bank, deposits, patents, copyrights, trademarks and trade names, insurance policies, tax refunds, rebates, insurance refunds and claims, choses in action that are legally assignable, together with the proceeds of any existing non-assignable choses in action that may hereafter be recovered or received by the Assignor.

This assignment specifically includes and covers all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from the Assignor by the U.S. Treasury Department, and any State or local taxing agency, and the Assignor agrees to sign and execute power of attorney or all other documents as required to enable said Assignee to file and prosecute, compromise and/or settle, all such claims before the Internal Revenue Service and any State or local taxing agency, and agrees to endorse any tax refund checks relating to the prior operations of said Assignor's business and to deliver such checks to the Assignee.

Leases and leasehold interests in real estate are not included in this assignment. However, if the Assignee shall determine that the same may be assigned and also that the same has a realizable value for creditors, then the Assignor agrees that upon written demand of the Assignee, it will assign and transfer said lease or leasehold interest to said Assignee, or nominee, for administration under the terms of this general assignment.

Contracts and/or agreements between Assignor and any Labor Union, or Trade Associations, are excepted from and not included in this assignment.

The Assignor authorizes the forwarding of its mail by the U.S. Postal Department as directed by the Assignee.

Said Assignee is to receive the said property, conduct the said business, should it deem it proper, and is hereby irrevocably authorized at any time after the execution hereof to sell, lease, or otherwise dispose of said property upon such time and terms as it may see fit. Said Assignee shall use and apply the net proceeds arising from the conducting of said business and from the sale, or lease or other disposition of said property as follows:

05/22/2007  00:03    90979    ¡                    FTI                              PAGE  02

*FIRST:* To deduct therefrom (or to reimburse itself with respect to) all sums which said Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under the law is entitled to priority of payment, and all expenses, including a reasonable fee (as hereinafter defined) and to its attorney, and to the attorney for the Assignor; and, in those instances where a creditors' committee has been selected at any meeting of the creditors of the Assignor (without regard to the actual amount or number of creditors present at such creditors' meeting) then a reasonable fee shall be paid to the attorney appointed by said Creditors' Committee in an amount fixed by the said creditors' committee and said Assignee.

*SECOND:* The balance of the proceeds then remaining shall be paid to the creditors of the Assignor, pro rata, according to the indebtedness due each of them, individually, from the Assignor.

With respect to the fees of the Assignee referred to in the aforementioned paragraph *FIRST* hereinabove. Assignor hereby expressly and irrevocably agrees as follows: That the term "a reasonable fee to Assignee", as used herein, is defined as, and includes the following: (a) An administration fee computed on the basis of the total monies handled in connection with this Assignment and for the assembly, inventorying, collection and liquidation of the assets assigned, in accordance with the following schedule, to wit: the greater of a minimum fee of $25,000, or a fee calculated on the following schedule shall apply: From proceeds received from sale of assets 6% of the first $1 million received, 4% of the next $1 million received, and 3% of proceeds in excess of $2 million. There shall be excluded from the foregoing, however, monies received or disbursed in connection with and incidental to any actual continuing operation of the business assigned, as distinguished from monies received in connection with the collection and liquidation of the assets assigned.

The Assignee shall be entitled to reimbursement of all expenses incurred as a result of its administration out of the proceeds generated therefrom.

In addition to all the foregoing fees and charges, the Assignor expressly agrees that the Assignee shall be entitled to a further fee equal to any and all interest earned and received by the Assignee on any trust and other funds in its hands and arising from this assignment.

The total of all of said fees shall be paid from the property assigned, and from all of the proceeds thereof and from any interest, income and increments and any additions thereto.

Any contract, liability, or obligation made by Assignee in connection with the administration of this agreement shall not personally bind Assignee or any of its officers, agents, or employees, but it shall obligate Assignee in its capacity as Assignee only, whether or not the Contract specifically so provides. Assignee hereunder shall be liable only in its official capacity for reasonable care and diligence in administering the estate created by this assignment.

Assignor as to all existing creditors extends the statute of limitations upon their respective claims for a period of one year from the date hereof.

Said Assignee is also authorized and empowered to appoint such agents, field representatives, attorneys and/or accountants as it may deem necessary, and such agents and/or field representatives shall have full power and authority to open bank accounts in the name of the Assignee or its nominees or agents and to deposit assigned assets or the proceeds thereof in such bank accounts and to draw checks thereon and with the further power and authority to do such other acts and to execute such papers and documents in connection with this assignment as said Assignee may consider necessary or advisable.

*IN WITNESS WHEREOF*, the said parties have hereunto set their hands the day and year first above written.

By: _____ – PRESIDENT
　　　Allen A. Jones, President

CREDIT MANAGERS ASSOCIATION OF CALIFORNIA
a California corporation, doing business as
CMA BUSINESS CREDIT SERVICES

By: _____
　　　Robert J. Hoder, Vice President and Corp. Secretary

05/21/2007  03:57   9897'    J            FTI                    PAGE  04

# CONSENT OF DIRECTORS TO HOLD MEETING

*Fontana, California*

*May 21, 2007*

We, the undersigned, being all of the directors of the Flex Trim North Carolina, Inc., a corporation organized under the laws of the State of North Carolina, assembled this day at the office of the Corporation at Fontana, California, do hereby consent that a meeting of said directors be held at this time and place for the transaction of such business as may come before the meeting, and waive any notice of said meeting.

Allen A. Jones

# MINUTES OF THE MEETING

*Fontana, California, May 21, 2007*

At a meeting of the directors of the Flex Trim North Carolina, Inc., a corporation, held at the office of the Company at 15435 Arrow Route, Fontana, California, at 3:45 o'clock ☞ M, the following directors were present:

Allen A. Jones

*The President announced that the purpose of the meeting was to consider the financial condition of the company and the advisability of making a general assignment for the benefit of creditors.*

*On motion by Allen A. Jones, seconded by Allen A. Jones, the following resolution was adopted, to-wit:*

*BE IT RESOLVED:*

*That any one of the officers of this corporation be, and he is, hereby authorized and directed by the directors of this company, in meeting assembled, to make an assignment of all assets of the corporation to Credit Managers Association of California, a California corporation, of Burbank, California, doing business as CMA Business Credit Services, for the pro rata benefit of all creditors of this corporation, and that any one officer    shall, and he is hereby authorized and directed to execute said assignment containing such provisions as may be agreed upon between them and said Credit Managers Association of California, a California corporation, doing business as CMA Business Credit Services (Assignee), and he is also authorized and directed to execute and deliver to said Credit Managers Association of California, a California corporation, doing business as CMA Business Credit Services (Assignee), such other deeds, assignments, and agreements as may be necessary to carry this resolution into effect.*

*BE IT FURTHER RESOLVED:*

*That said assignee for the benefit of creditors be, and it hereby is, authorized to execute and file and prosecute on behalf of this corporation all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from this corporation and any one officer of this corporation be, and it is, hereby authorized and directed to make, execute and deliver in favor of such person as may be designated by the assignee for the benefit of creditors, a power of attorney on the regular printed form thereof used by the United States Treasury Department so as to authorize said attorney-in-fact to process any tax claims for it on behalf of this corporation.*

There being no further business to come before the directors, the meeting adjourned subject to the call of the President or Vice-President.

*Allen A. Jones, President*

I, Allen A. Jones, President of the Flex Trim North Carolina, Inc., a corporation, do hereby certify that the foregoing is a true and correct copy of the minutes of the meeting of directors held in Fontana, California, at the place and hour stated and that the resolution contained in said minutes was adopted by the directors at said meeting and the same has not been modified or rescinded.

Dated May 21, 2007                    _____ - PRESIDENT
                                      Allen A. Jones, President

CORPORATE
SEAL

# CONSENT TO ASSIGNMENT BY STOCKHOLDERS

We, the undersigned, being owners and holders of 50,000 shares of stock, being more than 50% of the subscribed and issued stock of Flex Trim North Carolina, Inc., a corporation, do hereby give our consent to the within assignment and transfer of the property of said corporation.

*NAME*                                        SHARES HELD

_____ - MANAGER          50,000
Tahus, LLC, a Nevada Limited Liability Company

_____                    _____

_____                    _____

Re:    Flex Trim North Carolina, Inc.
       111 Sigma Drive
       Garner, NC  27529-8543

Attached hereto is a complete list of the creditors and shareholders of Flex Trim North Carolina, Inc., which list includes names, addresses, cities, states, zip codes, together with the anticipated claim for each creditor of the assignment estate.

I declare under penalty of perjury that the information contained in the attached list is true and correct. ← TO THE BEST OF MY KNOWLEDGE. 

Dated: _5-21-07_

Flex Trim North Carolina, Inc.

By: Allen A. Jones   - PRESIDENT
Its: President

05/21/2007  03:57    909792                    FTI                              PAGE  07

| VENDOR LIST COMPANY NORTH CAROLINA | CONTACT | ADDRESS | NATURE | DEBT |
|---|---|---|---|---|
| RESINAS LAGUNAS 619-955-7862 | A/R | 482 W SAN YSIDRO BLVD SUITE 1999 SAN YSIDRO, CA. 92173 | RESIN SUPPLIER | $273,943.58 |
| ALISSIMO AS DE CV | A/R | 415 W SAN YSIDRO BLVD SUITE L-428 SAN YSIDRO, CA 92173 | RESIN SUPPLIER | $149,235.04 |
| FEDERAL EXPRESS 901-395-3014 | SHARRON | PO BOX 7221 PASADENA, CA 91109 | FREIGHT | $21,067.44 |
| PAPA LION 909-748-0576 | MARK | PO BOX 2260 REDLANDS, CA 92373 | CORPORATE | $26,914.75 |
| EDGEWATER SERVICES 800-328-5842 | A/R | 4000 BUSINESS PRK DR SUITE 113 RALEIGH, NC 27610 | FREIGHT | $14,488.56 |
| O'CONNOR & ASSOCIATES 800-894-4199 | A/R | 1411 EAST MAIN ST SUITE 102 EAST DUNDEE, IL 60118 | SALES ASSOC | $5,988.66 |
| R & L CARRIERS 937-382-1494 | A/R | PO BOX 713153 COLUMBUS, OH 43721 | FREIGTH | $5,270.10 |
| THE HOME DEPOT 800-685-6691 | A/R | PO BOX 6029 DEPT 32-2014136604 THE LAKES, NV 88901 | HOME SUPPLIES | $2,924.15 |
| INDUSTRIAL PACKAGING GRP 919-570-9640 | A/R | 165 WEATHERS ST YOUNGSVILLE, NC 27596 | PACKAGING | $2,522.69 |
| ESTES EXPRESS LINES 804-353-1900 | A/R | PO BOX 25612 RICHMOND, VA 23260 | FREIGHT | $2,235.94 |
| OLD DOMINION FREIGHT LINE 336-822-5166 | A/R | PO BOX 79008 CITY OF INDUSTRY, CA 91716 | FREIGHT | $1,829.30 |

05/21/2007  03:57     90979     J          FTI                    PAGE  08

| | | | | |
|---|---|---|---|---|
| FLEX TRIM FONTANA 909-748-6578 | MARK | PO BOX 2260 REDLANDS, CA 92373 | FLEX MOULDING | $1,326.88 |
| GOLDEN EAGLE INSURANCE | A/R | PO BOX 85834 SAN DIEGO, CA 92186 | HEALTH INS. | $1,118.53 |
| INGERSOLL-RAND CO. 336-722-5177 | A/R | PO BOX 951358 DALLAS, TX 75395 | SUPPLIER | $1,007.69 |
| THE REPS.COM 407-928-0022 | A/R | 1 AQUAMARINE AVE NAPLES, FL 34114 | SALES ASSOC | $1,001.58 |
| AIR POWER,INC 800-334-1001 | A/R | PO BOX 5406 HIGH POINT, NC 27262 | SUPPLIER | $903.27 |
| FEDEX FREIGHT EAST 800-382-8067 | A/R | 4103 COLLECTION CTR CHICAGO, IL 60693 | FREIGHT | $892.77 |
| PALLET ONE, INC 919-837-2105 | A/R | 2340 IKE BROOKS RD SILER CITY, NC | PALLETS | $731.00 |
| GS MANUFACTURING INC 949-642-1500 | A/R | 985 W 18TH ST COSTA MESA,CA 92627 | SUPPLIER | $726.05 |
| STAPLES CREDIT PLAN 800-767-1291 | A/R | DEPT 82-0006608873 PO BOX 9020 DES MOINES, IA 50368 | OFFICE SUPPLIES | $632.18 |
| SAMS CLUB 800-203-5764 | A/R | PO BOX 530970 ATLANTA, GA 30353 | SUPPLY | $572.14 |
| REYNALDO MENDEZ | LORI | FLEX TRIM GARNER 111 SIGMA DR GARNER, NC 27529 | LOAN | $500.00 |
| WASTE MANAGEMENT 919-405-2440 | A/R | PO BOX 105453 ATLANTA, GA 30348 | WASTE | $432.92 |
| FRANKLYNN INDUSTRIES 800-755-1677 | A/R | 39364 TREASURY CTR CHICAGO, IL | PACKAGING | $294.00 |

| | | 60694 | | |
|---|---|---|---|---|
| MCMASTER-CARR SUPPLY<br>404-346-7000 | A/R | PO BOX 7690<br>CHICAGO, IL<br>60680 | SUPPLIES | $188.20 |
| UNITED PARCEL SERVICE<br>800-222-8333 | A/R | PO BOX 894820<br>LOS ANGELES, CA<br>90189 | FREIGHT | $133.05 |
| FERRELLGAS,INC<br>919-851-1262 | A/R | PO BOX 173940<br>DENVER, CO<br>80217 | PROPANE | $109.80 |



**EXHIBIT  B**

<u>**DECLARATION OF MICHAEL L. JONCICH IN SUPPORT OF RECEIVER'S**</u>

<u>**MOTION FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**</u>

I, MICHAEL L. JONCICH, DECLARE AS FOLLOWS.

    1.    I am an employee of Credit Managers Association of California, a California corporation, doing business as CMA Business Credit Services ("CMA") assignee of Flex Trim California, Inc. ("FTC") and Flex Trim North Carolina, Inc. ("FTNC", and, collectively, the "Flex Trim Entities"). I have personal knowledge of the facts stated below, or have gained knowledge of them from documents I have obtained and reviewed or from the professionals employed to assist me herein, and, if called as a witness, I could and would testify competently thereto.

    2.    On May 21, 2007, Petitioner Allen A. Jones, purporting to act as the manager and owner of fifty percent (50%) or more of the shares of FTC and the manager of Tahus, LLC, a Nevada limited liability company ("Tahus"), the owner of fifty percent (50%) or more of the shares of FTNC, assigned their assets to CMA, commencing what is commonly referred to as an "Assignment for the Benefit of Creditors" for each of FTC and FTNC. The parallel proceedings were commenced with documents standard in such matters, known as "assignments." Attached respectively as Exhibits "F" and "G" hereto and incorporated herein by this reference are true and correct copies of the assignments made by Mr. Jones for FTC and FTNC.

    3.    Consistent with its mandate, as assignee, to liquidate the Flex Trim Entities' assets, CMA marketed the operating assets of the Flex Trim Entities and ran an auction process with respect to them. Three companies posted a $100,000 deposit required by CMA, executed preliminary letters of intent that qualified them to bid, and made minimum bids of $1,000,000. These bidders were HB&G Building Products, Inc., a Delaware corporation ("HB&G"), West End Partners and Woodgrain Millwork, Inc. ("Woodgrain").

    4.    An auction amongst the bidders was held on Friday, July 27, 2007, culminating in HB&G being the winner with a high bid of $2.2 million. Subsequent to the auction, CMA and HB&G negotiated an Asset Purchase Agreement dated August 20, 2007 (the "APA") between CMA and an affiliate of HB&G which was to hold the purchased assets.

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110824.2

5.    The sale closed later on August 24, 2007, with CMA receiving net proceeds from the sale of $2,064,053.97, after taking into account a "purchase price adjustment" that was made in accordance with the terms of the APA and the $100,000 deposit which HB&G had previously paid. Attached as Exhibit "H" hereto and incorporated herein by this reference is a true and correct copy of a closing statement for the sale. Also, CMA paid $50,000 to Woodgrain as a break-up fee.

6.    Attached as Exhibit "I" hereto and incorporated herein by this reference is a true and correct copy CMA's accounting to date of the assignments of the Flex Trim Entities, including CMA's payments of (a) attorney's fees and costs; (b) outside agent fees; and (c) CMA's administrative fees, as permitted by California law.

7.    Pursuant to notices sent out after the assignments, CMA provided notice to all creditors that November 26, 2007 was the last deadline for filing claims in the assignments. Thereafter, certain creditors filed claims, as listed on Exhibit "I". However, if a creditor did not file a claim, it is not entitled to be paid anything, regardless of what might otherwise be indicated on the books of the Flex Trim Entities. Also, in certain cases CMA has determined that although the creditor filed a claim, the claim should be disallowed, and therefore CMA does not believe that the claim is valid and CMA does not (and would not, absent the Letter Agreement) pay the claim (collectively, the "Disallowed Claims").

8.    Each of the Receiver, Respondent Mary Kay Jones, Jose C. Corral, purporting to act on behalf of Alissimo S.A. de C.V. ("Alissimo"), and Francisco Elorza, purporting to act on behalf of Resinas Laguna, S.A. de C.V. ("Resinas") filed various claims against the proceeds held by CMA. Not including these latter claims, and also not including employee claims, discussed below, or the Disallowed Claims, the total of the claims filed against FTC was $74,666.67, and the total of the claims filed against FTNC was $398,732.88. However, R&D Properties, Inc., the landlord of FTNC, has agreed to reduce its claim from $336,000 to $96,000, and therefore the total amount of FTNC claims (again excluding the claims of the Receiver, Mrs. Jones, Mr. Corral and Mr. Elorza and Disallowed Claims) is now $158,732.88.

///

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110824.2

9.      In addition to claims filed by vendors and other entities which claimed they were owed funds by FTC and FTNC, employees of the entities are also owed priority claims pursuant to California Code of Civil Procedure §1204(a)(1) with respect unpaid wages and accrued vacation and sick pay in the 90 days prior to the assignments. As noted on Exhibit "J", these "priority" claims are $7,889.85 for FTC and $12,521.87 for FTNC, or a total of **$20,411.72**. In addition, CMA has determined that certain of the hourly employees are also owed general unsecured claims for wages and accrued vacation and sick pay due and owing at the time of the assignments, which amounts do not constitute priority claims. As noted on Exhibit "J", these general unsecured claims aggregate $14,926.27 for FTC and $28,353.80 for FTNC, or a total of **$43,280.07**.

10.      Attached as Exhibit "J" hereto and incorporated herein by this reference is a true and correct copy of a spreadsheet showing the calculation of the amounts owing to employees. CMA filed claims on behalf of the employees, and the amounts to be paid include the amount of "employer" taxes that will be due in conjunction with the payments. I believe it is critical to pay the employees before year end both to provide them with extra cash prior to the holidays and to save costs by obviating the need to generate the additional W-2s that would be required if payments were made in 2008.

11.      Mr. Corral and Mr. Elorza filed two claims each with CMA, purportedly on behalf of Alissimo and Resinas, respectively, as follows: with respect to FTC, $98,613.91 (Corral/Alissimo) and $217,490.53 (Elorza/Resinas), and, with respect to FTNC, $195,064.16 (Corral/Alissimo) and $385,221.21 (Elorza/Resinas). The claim $195,064.16 by Corral/Alissimo with respect to FTNC has been proposed to be allowed by CMA in the reduced amount of $152,451.24 to account for a credit due in the amount of $42,612.92. After that adjustment, the four Alissimo and Resinsas claims total $853,776.89. Attached respectively as Exhibits "K" to "N" hereto and incorporated herein by this reference are a true and correct copies of the Alissimo and Resinas claims.

12.      The Receiver filed four claims as to FTC and FTNC as follows, $907,173.74 against FTC, $638,619.50 against FTNC and a proof of interest in an unknown amount as to

20

LOS:110824.2

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

1  each entity. The Receiver filed his claims on behalf of amounts purportedly owing by FTC and

2  FTNC to Papa Lion, Inc. ("Papa Lion"). Attached respectively as Exhibits "O" to "R" hereto

3  and incorporated herein by this reference are a true and correct copies of the claims filed by the

4  Receiver.

5       13.    Mrs. Jones filed claims with CMA, one each as a proof of interest for each of FTC

6  and FTNC. Attached respectively as Exhibits "S" and "T" hereto and incorporated herein by this

7  reference are a true and correct copies of the claims filed by Mrs. Jones.

8       14.    CMA's accounting, Exhibit "I", shows certain payments for "administrative"

9  claims, *i.e.*, those claims made on account of expenses related to the administration of the

10  assignment estates. These amounts include, notably, (1) payments paid to CMA as its

11  administrative fee, $81,000.00 for FTC and $25,000.00 for FTNC for a total of $106,000, or six

12  percent (6%) of the first $1 million of the $2.2 million in sale proceeds, four percent (4%) of the

13  next $1 million and three percent (3%) of the amount in excess of $2 million; (2) payments for

14  attorney's fees and costs paid to (a) Schulman Hodges & Bastian LLP ("SHB"), attorneys for

15  CMA, in the total amount of $102,346.90; (b) Schumaker, Loop & Kendrick, North Carolina

16  counsel to CMA in the amount of $15,786.37; and (c) Broker & Associates, the attorney for FTC

17  and FTNC which Mr. Jones consulted prior to causing the assignments in the amount of

18  $3,602.60, in connection with documented the loan Mr. Jones made to CMA; (3) payments for

19  "adjuster services" in the amount of $14,736.53; (4) payments to "outside labor," in the amount

20  of $67,683.37; and (5) a payment to Kibel Green in the amount of $6,081.56 as a consultant fee

21  for services related to the sale.

22       15.    CMA's fees were calculated and paid according to the formula set forth above

23  and as provided by the assignments executed by Mr. Jones. Most of the SHB's fees were related

24  to advice related to the negotiation and consummation of the sale to HB&G, and thus SHB's

25  work had a direct impact on the proceeds of the sale which were received. In the performance of

26  its administration of assets, as assignee, CMA utilizes the services of adjusters to marshal assets,

27  change locks, pack business records and provide basic bookkeeping services. CMA advances

28  the expense for adjusters and reimburses its costs from the liquidation proceeds. The fees for

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110824.2

"outside services" were paid to Management Pro Tem.    CMA utilized the services of Management Pro Tem, an independent administrator, to function as supervisor for the operation of the Flex Trim Entities and the transfer of assets to the ultimate buyer.

16.    Exhibit "I" also shows a payment in the amount of $87,975.28.  This payment was made to remove certain materials prior to the sale that had to be treated as hazardous waste under California law.

17.    As set forth on Exhibit "I", currently CMA holds approximately $1,567,422.64, including the proceeds of the sale to HB&G net of other amounts paid, including the professional fees and other amounts as set forth therein.  In addition, to complete the transactions outlined in the Letter Agreement, CMA will have certain additional costs, which it estimates to be $40,552.49 (the "Proposed Reserve"), also as set forth on Exhibit "I".  The Proposed Reserve is an estimate, only, and any amounts not actually spent will also be paid to the Receiver.

18.    In addition to the claims discussed above, CMA may also hold avoidance claims under California state law or claims for recovery of fraudulent transfers not related to Alissimo and Resinas.  CMA has one year from the date of the assignments to assert the avoidance claims, but it has yet to make an investigation into them in light of the Letter Agreement.

I declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.    Executed this _13th_ day of December, 2007, at Burbank, California.

MICHAEL L. JONCICH

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

LOS:110824.2

601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

**EXHIBIT C**



# PROOF OF CLAIM

Case No. ~~34228~~ 34222

**To:**   CMA Business Credit Services
PO Box 7740
Burbank, California 91510-7740

**Re:**   Flex Trim North Carolina, Inc.

The undersigned is a creditor of the above subject debtor(s) and I/we hereby file my/our claim below as follows:

As evidence of my/our claim, an itemized statement of my/our account and/or a copy of a promissory note is hereto attached.

**THE AMOUNT OF MY/OUR CLAIM IS:**   $98,613.91

**DATED:**  July 6, 2007

**COMPANY NAME:**  ALISSIMO, SA DE CV

**BY:**   Jose C Corral          **TITLE:**  Manager

**ADDRESS:**  416  W San Ysidro Blvd. Suite L-428
San Ysidro, CA 92173

**PHONE:** (619)  793 5366       **FAX:**   (619)  446 6570

**E-MAIL:**  alissimotj@yahoo.com
alissimo2@prodigy.net.mx

**RECEIVED**
JUL 1 1 2007
**ADJUSTMENT BUREAU**

RECEIVED
JUL 1 1 2007
ADJUSTMENT BUREAU

**NOTE:** Interest is applicable only to the date of May 21, 2007, and then only in the event a written agreement exists between you and the debtor providing for payment of interest.

*PLEASE COMPLETE THIS FORM, ATTACH AN ITEMIZED STATEMENT OF YOUR ACCOUNT THEREON, AND RETURN AT ONCE TO:*

**ADJUSTMENT BUREAU**
Attn: Michael L. Joncich
CMA Business Credit Services
PO Box 7740, Burbank, California  91510-7740



#2

# PROOF OF CLAIM

To: · CMA Business Credit Services
PO Box 7740
Burbank, California 91510-7740

Case No. 34223

Re: Flex Trim North Carolina, Inc.

The undersigned is a creditor of the above subject debtor(s) and I/we hereby file my/our claim below as follows:

As evidence of my/our claim, an itemized statement of my/our account and/or a copy of a promissory note is hereto attached.

THE AMOUNT OF MY/OUR CLAIM IS:   $195,064.16

DATED:  July 6, 2007

COMPANY NAME:  ALISSIMO, SA DE CV

BY:    Jose C Corral          TITLE:  Manager

ADDRESS:  416  W San Ysidro Blvd. Suite L- 428
San Ysidro,  CA  92173

PHONE: (619) 793 5366      FAX:  (619)  446 6570

E-MAIL:  alissimotj@yahoo.com
alissimo2@prodigy.net.mx

RECEIVED

JUL 1 1 2007

ADJUSTMENT BUREAU

NOTE: Interest is applicable only to the date of May 21, 2007, and then only in the event a written agreement exists between you and the debtor providing for payment of interest.

*PLEASE COMPLETE THIS FORM, ATTACH AN ITEMIZED STATEMENT OF YOUR ACCOUNT THEREON, AND RETURN AT ONCE TO:*

ADJUSTMENT BUREAU
Attn:  Michael L. Joncich
CMA Business Credit Services
PO Box 7740, Burbank, California  91510-7740



**EXHIBIT D**

# 25

# PROOF OF CLAIM

To:   CMA Business Credit Services
PO Box 7740
Burbank, California 91510-7740

Case No. 34222

Re:   Flex Trim California, Inc.

The undersigned is a creditor of the above subject debtor(s) and I/we hereby file my/our claim below as follows:

As evidence of my/our claim, an itemized statement of my/our account and/or a copy of a promissory note is hereto attached.

THE AMOUNT OF MY/OUR CLAIM IS $ ___217,490.53___

Dated: ___July 6, 2007___

COMPANY NAME ___Resinas Laguna, S.A. de C.V.___

BY ___Francisco Elorza___   TITLE ___General Manager___

ADDRESS ___482 W. San Ysidro Blvd. Suite 1999___

CITY, STATE, ZIP ___San Ysidro, CA. 92173___

PHONE NO. ___619-955-6872___   FAX# ___619-446-6570___

EMAIL ___reslaguna@prodigy.net.mx___

**RECEIVED**

JUL 13 2007

ADJUSTMENT BUREAU

NOTE: interest is applicable only to the date of May 21, 2007, and then only in the event a written agreement exists between you and the debtor providing for payment of interest.

*PLEASE COMPLETE THIS FORM, ATTACH AN ITEMIZED STATEMENT OF YOUR ACCOUNT THEREON, AND RETURN AT ONCE TO:*

ADJUSTMENT BUREAU
Attn: Michael L. Joncich
CMA Business Credit Services
PO Box 7740, Burbank, California 91510-7740



#29

RECEIVED

# PROOF OF CLAIM

JUL 2 0 2007

ADJUSTMENT BUREAU

Case No. 34223

To:    CMA Business Credit Services
       PO Box 7740
       Burbank, California 91510-7740

Re:    Flex Trim North Carolina, Inc.

The undersigned is a creditor of the above subject debtor(s) and I/we hereby file my/our claim below as follows:

As evidence of my/our claim, an itemized statement of my/our account and/or a copy of a promissory note is hereto attached.

THE AMOUNT OF MY/OUR CLAIM IS $    385,221.21

Dated: July 6, 2007

COMPANY NAME  Resinas Laguna, S.A. de C.V.

BY  Francisco Elorza        TITLE  General Manager

ADDRESS  482 W. San Ysidro Blvd. Suite 1999

CITY, STATE, ZIP  San Ysidro, CA. 92173

PHONE NO.  619-955-6872        FAX#  619-446-6570

EMAIL  reslaguna@prodigy.net.mx

NOTE: Interest is applicable only to the date of May 21, 2007, and then only in the event a written agreement exists between you and the debtor providing for payment of interest.

PLEASE COMPLETE THIS FORM, ATTACH AN ITEMIZED STATEMENT OF YOUR ACCOUNT THEREON, AND RETURN AT ONCE TO:

ADJUSTMENT BUREAU
Attn: Michael L. Joncich
CMA Business Credit Services
PO Box 7740, Burbank, California 91510-7740



**EXHIBIT E**

May 23 2007 2:49PM    GWW LAW                          9098890544          P.2

05-21-2007  03:42pm  From-GRESHAM SAVAGE NOLAN TILDEN LLP    19108842150    T-286  P.002/007  F-716

```
FILED -Central District
       SUPERIOR COURT
   SAN BERNARDINO COUNTY

        MAY 22 2007

By _____
                    Deputy
```

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN BERNARDINO

ALLEN A. JONES,

    Petitioner,

vs.

MARY KAY JONES,

    Respondent.

CASE NO. SBFSS 64717

ORDER APPOINTING RECEIVER AND DIRECTING CERTAIN OTHER MATTERS

    The Order to Show Cause application of Respondent, MARY KAY JONES, seeking certain orders and appointments came on regularly for hearing on May 11, 2007 with Petitioner, ALLEN A. JONES, being present in court, represented by his counsel of record, Gresham Savage Nolan and Tilden by John C. Nolan, and Respondent, MARY KAY JONES, being present in court, represented by her counsel of record, Granowitz, White and Weber, by Richard A. Granowitz, and counsel for the parties having reviewed and discussed said application in detail with the Court, in chambers; and the Court having reviewed all of the pleadings, declarations and exhibits filed herein by both parties:

///

///

///

///

GRESHAM SAVAGE
NOLAN & TILDEN
A Professional Corporation
3750 University Ave., Ste. 250
Riverside, CA  92501-3335
(951) 684-2171

- 1 -

ORDER APPOINTING RECEIVER AND DIRECTING CERTAIN OTHER MATTERS

05-21-2007   03:42pm   From-GRESHAM SAVAGE NOLAN TILDEN LLP     9516042100        T-208   P.003/007   F-715

IT IS HEREBY ORDERED AS FOLLOWS:

1.   There are joined to these proceedings the following entities:

    a.   Rez-Line, Incorporated;

    b.   Circle Trim Materials, Inc.;

    c.   Flex Trim North Carolina, Inc.;

    d.   Papa Lion, Inc.;

    e.   Flex Trim California, Inc.;

    f.   I-Trim;

    g.   Hydro Fog, Inc.;

    h.   Jonesfoam;

    i.   Trim Flex of California, Inc.;

    j.   Tahus, LLC;

    k.   Afissimo S.A. de C.V.;

    l.   Moldflex S.A. de C.V.;

    m.   Mountcreek Ventures, Corp.;

    n.   Resinas Laguna S.A. de C.V.;

    o.   Carter Millwork, Inc.; and,

    p.   Sandstone, LLC;

all of the foregoing joined parties will hereinafter be individually and collectively referred to as "the Entities".

2.   Chicago Title is directed to produce to Respondent's attorney a copy of its file regarding Escrow Number 27030727-62, relating to real property located at 660 East Mariposa Drive, Redlands, California.

3.   Petitioner is enjoined and restrained from removing any information from any business in which he has a community or separate interest including, but not limited, to all books, records and information on any computers thereof.

4.   Dennis M. Murphy is appointed temporary receiver of each of "the Entities" and their subsidiaries and affiliates, with full powers of an equity receiver, including (but not limited

- 2 -

GRESHAM SAVAGE
NOLAN & TILDEN, LLP
A Partnership Corporation
3403 Tenth Street, Ste. 700
San Bernardino, CA 92401-1325
(909) 890-4499

FRED H (                 ORDER APPOINTING RECEIVER AND DIRECTING CERTAIN OTHER MATTERS

05-23-2007  09:49PM  From-GRESHAN SAVAGE NOLAN TILDEN LLP      0916042160        T-205  P.004/007  F-716

to) full power over all funds, assets, collateral, premises (whether owned, leased, occupied or otherwise controlled), choses in actions, books, records, papers, and other real or personal property, including notes, deeds of trust, and other interest in real property belonging to, managed by, or in the possession or control of the Entities, and any of their subsidiaries and affiliates. Mr. Murphy is immediately authorized, empowered, and directed to:

A.  Access and to take custody and control of all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers, and other real property including notes, deeds of trust, and other interest in real property of or managed by the Entities and their subsidiaries and affiliates, with full power to sue, foreclose, marshal, collect, receive, and take into possession all such property;

B.  control and be added as the sole authorized signatory for all accounts of the Entities and their subsidiaries and affiliates, including all accounts over which their officers, employees or agents, have signatory authority, at any bank, title company, escrow agent, financial institution, or brokerage firm, which has possession, custody, or control of any assets or funds of the Entities or which maintain accounts over which the Entities and/or any of their officers, employees, or agents have signatory authority;

C.  conduct such investigation as may be necessary to locate and account for all assets of, or managed by, the Entities and their subsidiaries and affiliates, and to employ attorneys, accountants, and other person to assist in such investigation;

D.  take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets of, the Entities and their subsidiaries and affiliates;

E.  make an accounting to this Court of the assets and financial condition of the Entities and the assets under their management, including all notes, deeds of trust, and other interest in real property, and to file the accounting with the Court and deliver copies to all parties by August 15, 2007;

- 3 -

GRESHAM SAVAGE
NOLAN & TILDEN,
A Professional Corporation
3403 Tenth Street, Ste 800
Riverside, CA 92501-3509
(951) 684-2171

ORDER APPOINTING RECEIVER AND DIRECTING CERTAIN OTHER MATTERS

05-23-2007  03:48PM  From-GRESHAM SAVAGE NOLAN TILDEN LLP    8516842160    T-206  P.006/007  F-716

F.    make such payments and disbursements from the funds and assets taken into custody, control and possession or thereafter received by him, and to incur, or authorize the making of such agreements as may be necessary and advisable in discharging his duties as temporary receiver;

G.    access, monitor, and review all mail (including email) of the Entities in order to review such mail which he deems relevant to the business of these companies, and the discharging of his duties as receiver;

H.    exercise all of the lawful powers of the Entities and their officers, directors, employees, representatives, or persons who exercise similar powers and perform similar duties.

5.    Petitioner shall, within five court days of the date of this Order prepare and deliver to said Receiver a detailed schedule of all the Entities' assets, including all real and personal property exceeding $5,000.00 in value, and all bank, securities, futures, and other accounts identified by institution, branch address, and account number. The accountings shall include a description of the source(s) of all such assets. Such accounts shall be filed with the Court and copies shall also be delivered to Respondent's counsel.

6.    Except as otherwise ordered by this Court, both Petitioner and Respondent, the Entities, and their officers, agents, servants, employees, attorneys, subsidiaries and affiliates, and those persons in active concert or participation with any of them, who receive actual notice of this Order, by personal service or otherwise, are temporarily restrained from directly or indirectly, destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, any documents, including all books, records, computer programs, computer files, computer printouts, correspondence, memoranda, brochures, or any other documents of any kind in their possession, custody, or control, however created, produced, or stored whether manually or electronically stored pertaining to any of the Entities.

7.    That the Entities, and their subsidiaries and affiliates, and their officers, agents, servants, employees, and attorneys, and any other persons who are in custody, possession, or control of any assets, collateral, books, records, papers, notes, deeds of trust, or other interests in

GRESHAM SAVAGE
NOLAN & TILDEN,
A PROFESSIONAL CORPORATION
3750 UNIVERSITY Ave., Ste. 250
RIVERSIDE, CA 92501-3392
(951) 684-2171

- 4 -

ORDER APPOINTING RECEIVER AND DIRECTING CERTAIN OTHER MATTERS

May 23 2007 2:49PM    GWW LAW                    9098890544                    p.6

05-21-2007    08:43pm    From-GRESHAM SAVAGE NOLAH TILDEN LLP        9516642150            T-205    P.006/007    F-715

1   real property, or other property of, or managed by the Entities shall forthwith give access to and

2   control of such property to said temporary receiver.

3       8.    No counsel for either party is to have any unilateral contact with the temporary

4   receiver, however, the accountants for either party may do so, but no such contact shall be

5   deemed to be a privileged communication.

6       9.    The temporary receiver and anyone working on his behalf shall bill no more than

7   $190.00 collectively or in total average per hour for services performed hereunder.

8       10.    The temporary receiver is to make payment to Respondent of $12,150.00 per

9   month from the Entities as replacement for the spousal and child support previously in place in

10  this proceeding.

11      11.    A hearing on the Report of the temporary receiver will be held on September 20,

12  2007, at 8:30 a.m. in Department S-14.

13      12.    Either party may object to the Report or any fee charged by the temporary

14  receiver.

15      13.    Payment of $35,000.00 is to be made to Respondent's counsel from the funds of

16  the Entities by June 11, 2007, said sum to be as attorneys fees and/or costs, with the Court

17  reserving the right to re-characterize said payment at a later time.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

GRESHAM SAVAGE
NOLAN & TILDEN,
A Professional Law Corporation
550 University Ave., Ste. 200
San Diego, CA 92101-3800
(619) 232-0300

1740641                    - 5 -

ORDER APPOINTING RECEIVER AND DIRECTING CERTAIN OTHER MATTERS

05-21-2007  03:49pm  From-GRESHAM SAVAGE NOLAN TILDEN LLP    8513842150        T-205  P.007/007  F-715

14.    Nothing herein contained shall be deemed in any manner to be an admission or acknowledgement by Petitioner that any of the Entities are community property, or that they are controlled by either Party.

Dated: 5-22 , 2007

_____
JUDGE OF THE SUPERIOR COURT

APPROVED AS TO FORM AND CONTENT:

Dated: May 21 , 2007

GRESHAM SAVAGE NOLAN & TILDEN,
A Professional Corporation

By: John C. Nolan
John C. Nolan
Attorneys for Petitioner
ALLEN A. JONES

Dated: May 21 , 2007

GRANOWITZ, WHITE AND WEBER

By: _____
for Richard A. Granowitz
Attorneys for Respondent
MARY KAY JONES

THE DOCUMENT TO WHICH THIS CERTIFICATION IS
ATTACHED IS A FULL, TRUE AND CORRECT COPY OF
THE ORIGINAL ON FILE AND OF RECORD IN MY OFFICE.

MAY 2 2 2007

ATTEST
Clerk of the Superior Court of the State of
California, in and for the County of
San Bernardino.

By _____ Deputy

GRESHAM SAVAGE
NOLAN & TILDEN

F

**EXHIBIT F**

**TABLE OF CONTENTS FOR ATTACHMENTS TO MOTION FOR ORDER ON NO. 9**

Page

**MEMORANDUM OF POINTS AND AUTHORITIES**..........................................................1

   I.     INTRODUCTION .................................................................................1

   II.    FACTUAL BACKGROUND ................................................................2

        A.    The Flex Trim Entities and Tahus .............................................2

        B.    The Jones Dissolution and the Appointment of the Receiver...................3

        C.    The Assignments for the Benefit of Creditors .........................................3

        D.    CMA's Auction Sale and the Receiver's Motion With Respect to It ......4

        E.    The Deadline for Filing Claims and the Claims Filed by Creditors ........5

            1.    General Creditor Claims ..............................................................5

            2.    Employee Claims .........................................................................6

            3.    The Claims Purportedly Filed on Behalf of Alissimo and Resinas ...................................................................................6

            4.    The Receiver's Claims and Those Filed by Mrs. Jones................7

        F.    The Payments Made to Professionals and CMA's Fees ..........................7

        G.    The Cash Held by CMA .......................................................................8

        H.    The Litigation Claims CMA May Hold and the Proposed Indemnity .....8

        I.    The Letter Agreement and the Transactions Contemplated Thereby ......9

   III.   DISCUSSION .....................................................................................10

        A.    The Letter Agreement and the Transactions Contemplated Thereby Should Be Approved.........................................................................10

            1.    The Legal Standard ...................................................................10

            2.    The Terms of the Letter Agreement Should Be Approved.........11

        B.    The Assignment of Claims and the Proposed Indemnity Are Reasonable .............................................................................................11

   IV.   CONCLUSION....................................................................................12

**DECLARATION OF DENNIS M. MURPHY** ................................................................13

**DECLARATION OF MICHAEL L. JONCICH** ............................................................18

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S
MOTION FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110824.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### <u>Cases</u>

*Gold v. Gold*
        (2003) 114 Cal.App.4th 791, 806 ................................................................ 10

*Nulaid Farmers Ass'n v. LaTorre*
        (1967) 252 Cal.App.2d 788, 791-793 ........................................................ 11

*People v. University of Riverside*
        (1973) 35 Cal.App.3d 572, 582 ........................................................ 10, 11

### <u>Statute</u>

Cal. Code Civ. Proc. §1204(a)(1) ................................................................ 6

### <u>Other Authority</u>

2 Weil & Brown, *California Practice Guide: Civil Procedure Before Trial*
        (TRG 2007) ¶ 9:770-771, p.9(II)-514 ................................................ 10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

LOS:110824.2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF (1) LETTER**

**AGREEMENT BETWEEN RECEIVER AND CMA; (2) CMA ACCOUNTING;**

**(3) PAYMENTS TO EMPLOYEES; (4) PAYMENTS TO UNDISPUTED GENERAL**

**UNSECURED CREDITORS; (5) ASSIGNMENT OF CLAIMS BY CMA; (6) PAYMENT**

**OF REMAINING FUNDS BY CMA TO RECEIVER; AND (7) INDEMNITY BY**

**RECEIVER OF CMA IN CERTAIN CASES**

## I.    INTRODUCTION

Receiver Dennis M. Murphy (the "Receiver") seeks an order of the court approving a series of transactions that will allow Credit Managers Association of California, a California corporation, doing business as CMA Business Credit Services ("CMA"), assignee of Flex Trim California, Inc. ("FTC") and Flex Trim North Carolina, Inc. ("FTNC", and, collectively with FTC, the "Flex Trim Entities") to pay the undisputed claims arising from the assignments for the benefit of creditors of the Flex Trim Entities and then to pay the remaining amounts – and assign any remaining claims – to the Receiver. The Receiver believes that these transactions, if approved, will allow CMA and its professionals to complete their work with respect to the Flex Trim Entities, and will also allow any remaining disputes relating to the proceeds of the assignments to be resolved efficiently as part of the marital dissolution proceedings herein. In addition, and by design of the Receiver and CMA, this motion affords the court, Petitioner Allen A. Jones and Respondent Mary Kay Jones the opportunity to review CMA's accounting of its efforts to date with respect to the affairs of the Flex Trim Entities, before any payments are made by CMA to creditors.

Specifically, by this motion, the Receiver requests that the court approve the following:

1.    A letter agreement dated November 21, 2007 between the Receiver and CMA (the "Letter Agreement") (a copy of the Letter Agreement, which provides that it is subject to the approval of the court herein, is attached to the accompanying Declaration of Dennis M. Murphy ("Murphy Declaration") as Exhibit "A");

///

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S**
**MOTION FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

1     2.    CMA's accounting of the assignments of the Flex Trim Entities, including CMA's

2  payments of (a) attorney's fees and costs; (b) outside agent fees; and (c) CMA's administrative

3  fees, as permitted by California law (a copy of CMA's accounting is attached as Exhibit "I" to

4  the accompanying Declaration of Michael L. Joncich (the "Joncich Declaration"));

5     3.    The payment in full of all employee claims;

6     4.    The payment in full of all "undisputed" general unsecured creditors which have

7  filed claims;

8     5.    The assignment by CMA to the Receiver of certain litigation claims CMA may

9  hold by reason of the assignments;

10     6.    After the deduction of a reserve for certain items in the amount of $40,553.49, the

11  payment of all remaining funds held by CMA to the Receiver to be held in a segregated account

12  pending further order of the court;

13     7.    The indemnity by the Receiver of CMA, in certain instances, and up to a specified

14  cap, as set forth in the Letter Agreement.

15     This motion is being heard on shortened time pursuant to the court's order dated

16  December 11, 2007.  CMA is currently holding approximately $1,526,870.15 in free-and-clear

17  cash.  The Receiver believes that the relief sought herein is reasonable under the circumstances,

18  is in the best interests of the marital estate, and is the most efficient manner in which to proceed

19  in light of the funds CMA holds and the current posture of matters concerning the assignments.

20     **II.**    **FACTUAL BACKGROUND**

21  A.    The Flex Trim Entities and Tahus.

22     Starting in the late 1980's, Mr. Jones built a construction supply business which

23  employed proprietary technology and know-how to make and sell custom curved moldings made

24  of resin (essentially, a specialized type of plastic) to the construction industry, including

25  especially the residential home building industry.  Ultimately, the business operated in California

26  and the Southeast United States, through the Flex Trim Entities.

27     It is undisputed (for all purposes, the Receiver believes) that: (a) FTC is 100% owned by

28  Mr. Jones, and (b) FTNC is 100% owned by Tahus, LLC, a Nevada limited liability company

2

ANDREWS KURTH LLP<br>601 SOUTH FIGUEROA STREET, SUITE 3700<br>LOS ANGELES, CALIFORNIA 90017-5742<br>(213) 896-3100

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 895-3100

1  ("Tahus"), of which Mr. Jones is the sole member. Thus, it is undisputed that the stock of, or the

2  beneficial interests in, the Flex Trim Entities is a marital asset subject to the jurisdiction of this

3  court. (*See* Murphy Declaration, *infra*, para. 4.)

4  B.    The Jones Dissolution and the Appointment of the Receiver.

5        On April 3, 2002, Mr. Jones commenced the instant action. After almost five years of

6  proceedings, and frustrated with what she asserted to be the obfuscation and failure to fully

7  inform the court about the scope of his business affairs, on April 5, 2007, Mrs. Jones moved for

8  the appointment of a receiver over certain entities in which Mr. Jones had a partial or complete

9  interest. In conjunction with her motion, Mrs. Jones submitted three highly detailed declarations,

10  including numerous supporting exhibits, namely: (1) the Declaration of Mary Kay Jones; (2) the

11  Declaration of Richard A. Granowitz; and (3) the Declaration of Charlotte Reith. In further

12  support for her motion, on May 10, 2007, Mrs. Jones filed the Supplemental Declaration of

13  Richard A. Granowitz and the Supplemental Declaration of Charlotte K. Reith, CPA.

14        On May 11, 2007, after considering the evidence put forward by Mrs. Jones, and the

15  opposition thereto filed by Mr. Jones, which included his Responsive Declaration to OSC or

16  Notice of Motion, the Declaration of Allen A. Jones and the Declaration of Marvin M. Reiter,

17  CPA, the court appointed the Receiver with power over a number of entities, including the Flex

18  Trim Entities and Tahus. The court's order was set forth in its Minutes dated May 11, 2007 (the

19  "May 11 Minutes"). On May 22, 2007, the court signed its written Order Appointing Receiver

20  and Directing Certain Other Matters (the "May 22 Order"). Copies of the May 11 Minutes and

21  the May 22 Order are attached as Exhibits "B" and "C", respectively, to the Murphy

22  Declaration.[1]

23  C.    The Assignments for the Benefit of Creditors.

24        At some point prior to the entry of the May 22 Order, and apparently on or about May 21,

25  2007, Mr. Jones, purporting to act as the manager and sole owner of the Flex Trim Entities

26  and/or Tahus, assigned their assets to CMA, commencing a proceeding that is commonly

27

28  [1] Other entities were also included within the scope of the Court's orders.

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110524.2

1  referred to as an "Assignment for the Benefit of Creditors" for each of Flex Trim California, Inc.

2  and Flex Trim North Carolina, Inc.  The parallel proceedings were commenced with documents

3  standard in such proceedings, known as "assignments," and the assignments for the Flex Trim

4  Entities are attached as Exhibits "F" and "G", respectively, to the Joncich Declaration.

5      Immediately subsequent to his appointment, the Receiver learned about the assignments.

6  The Receiver immediately informed counsel for Mrs. Jones and Mr. Jones, by letter, of the fact

7  of the assignments.  A copy of the Receiver's letter to counsel dated May 24, 2007, is attached as

8  Exhibit "D" to the Murphy Declaration.

9      Because, by all accounts, the Flex Trim Entities were in financial distress, and in that Mr.

10  Jones had initiated the assignment process, the Receiver decided not to immediately contest the

11  validity of them.[2]  (See Murphy Declaration, infra, at para. 9.)  However, the timing of the

12  assignments is suspicious, at least, and occurred after the May 11, 2007 hearing held by this

13  court and possibly after Mr. Jones' then-counsel in this proceeding had signed off on the May 22

14  Order that was ultimately executed by the court. (See Murphy Declaration, infra, at para. 9.)

15  D.    CMA's Auction Sale and the Receiver's Motion With Respect to It.

16      Consistent with its mandate, as assignee, to liquidate the Flex Trim Entities' assets, CMA

17  marketed the operating assets of the Flex Trim Entities and ran an auction process with respect to

18  them. (See Joncich Declaration, infra, para. 3.)  Three companies posted a $100,000 deposit

19  required by CMA, executed preliminary letters of intent that qualified them to bid, and made

20  minimum bids of $1,000,000. (See Joncich Declaration, infra, para. 3.)  These bidders were

21  HB&G Building Products, Inc., a Delaware corporation ("HB&G"), West End Partners and

22  Woodgrain Millwork, Inc. ("Woodgrain").

23      An auction amongst the bidders was held on Friday, July 27, 2007, culminating in HB&G

24  being the winner with a high bid of $2.2 million.  (See Joncich Declaration, infra, para. 4.)

25  Subsequent to the auction, CMA and HB&G negotiated an Asset Purchase Agreement dated

26  August 20, 2007 (the "APA") between CMA and an affiliate of HB&G which was to hold the

*Flex Trim assets sold for $2.2M* (handwritten annotation)

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

---

2  The costs of the assignments are not insignificant, but the Receiver has not duplicated the efforts of CMA, its
28  attorneys and agents. (See Murphy Declaration, infra, at para. 9.)

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

1  purchased assets. On August 23, 2007, on an ex parte basis, the Receiver made his *ex parte*

2  Application by Receiver for Approval of Auction Sale and Related Transactions. After

3  continuing the hearing to Friday, August 24, 2007, the court approved the Receiver's application

4  and the sale pursuant to its Order Approving Auction Sale and Related Transactions dated

5  August 24, 2007 (the "Sale Order"). A copy of the Sale Order is attached to the Murphy

6  Declaration as Exhibit "E". Both Mr. Jones and Mrs. Jones appeared by counsel at the ex parte

7  hearing and the continued hearing.

8       The sale closed later on August 24, 2007, with CMA receiving net proceeds from the sale

9  of $2,064,053.97, after taking into account a "purchase price adjustment" that was made in

10  accordance with the terms of the APA and the $100,000 deposit which HB&G had previously

11  paid. A copy of a closing statement for the sale is attached as Exhibit "H" to the Joncich

12  Declaration.[3]

13  E.    The Deadline for Filing Claims and the Claims Filed by Creditors.

14       1.    *General Creditor Claims*

15       Pursuant to notices sent out after the assignments, CMA provided notice to all

16  creditors that November 26, 2007 was the last deadline for filing claims in the assignments.

17  Thereafter, certain creditors filed claims, as listed on Exhibit "I". However, if a creditor did not

18  file a claim, it is not entitled to be paid anything, regardless of what might otherwise be indicated

19  on the books of the Flex Trim Entities. Also, in certain cases CMA has determined that although

20  the creditor filed a claim, the claim should be disallowed, and therefore CMA does not believe

21  that the claim is valid and CMA does not (and would not, absent the Letter Agreement) pay the

22  claim (collectively, the "Disallowed Claims").

23       Each of the Receiver, Mrs. Jones, Jose C. Corral, purporting to act on behalf of Alissimo

24  S.A. de C.V. ("Alissimo"), and Francisco Elorza, purporting to act on behalf of Resinas Laguna,

25  S.A. de C.V. ("Resinas") filed various claims against the proceeds held by CMA. Not including

26  these latter claims, and also not including employee claims, discussed below, or the Disallowed

27  ─────────────
28  [3]  Also, and as set forth on Exhibit "I" but not on the closing statement, CMA paid $50,000 to Woodgrain as a break-up fee. This amount was authorized to be paid by the Sale Order.

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

1  Claims, the total of the claims filed against FTC was $74,666.67, and the total of the claims filed

2  against FTNC was $398,732.88.  However, R&D Properties, Inc., the landlord of FTNC, has

3  agreed to reduce its claim from $336,000 to $96,000, and therefore the total amount of FTNC

4  claims (again excluding the claims of the Receiver, Mrs. Jones, Mr. Corral and Mr. Elorza and

5  Disallowed Claims) is now $158,732.88.[4]

6          2.    *Employee Claims*

7               In addition to claims filed by vendors and other entities which claimed they were

8  owed funds by FTC and FTNC, employees of the entities are also owed priority claims pursuant

9  to California Code of Civil Procedure §1204(a)(1) with respect unpaid wages and accrued

10 vacation and sick pay in the 90 days prior to the assignments.  As noted on Exhibit "I", these

11 "priority" claims are $7,889.85 for FTC and $12,521.87 for FTNC, or a total of **$20,411.72**.  In

12 addition, CMA has determined that certain of the hourly employees are also owed general

13 unsecured claims for wages and accrued vacation and sick pay due and owing at the time of the

14 assignments, which amounts do not constitute priority claims.  As noted on Exhibit "I", these

15 general unsecured claims aggregate $14,926.27 for FTC and $28,353.80 for FTNC, or a total of

16 **$43,280.07**.

17         3.    *The Claims Purportedly Filed on Behalf of Alissimo and Resinas*

18              As noted above, Mr. Corral and Mr. Elorza filed two claims each with CMA,

19 purportedly on behalf of Alissimo and Resinas, respectively, as follows: with respect to FTC,

20 $98,613.91 (Corral/Alissimo) and $217,490.53 (Elorza/Resinas), and, with respect to FTNC,

21 $195,064.16[5] (Corral/Alissimo) and $385,221.21 (Elorza/Resinas).  However, by the terms of

22 the May 22 Order, the Receiver is also the receiver of Alissimo and Resinas.  Therefore, any

23 amounts that CMA would otherwise pay to these entities should be paid to the Receiver.

24

25

26 [4] As set forth on the accounting, there are seven (7) Disallowed Claims with respect to FTC and six (6) Disallowed Claims with respect to FTNC, for a combined total of $98,934.89. (*See* Joncich Declaration, Exhibit "I".)

27 [5] The claim $195,064.16 by Corral/Alissimo with respect to FTNC has been proposed to be allowed by CMA in the reduced amount of $152,451.24 to account for a credit due in the amount of $42,612.92. (*See* Joncich Declaration,

28 *infra*, para. 11.)

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

6

1    The Receiver contends that the Alissimo and Resinas claims may not be valid or entitled
2  to payment as stated.  Moreover, the Receiver contends that each of FTC and FTNC have
3  valuable claims against Alissimo and Resinas, which claims offset any amounts that would
4  otherwise be owing.  Together, the four Alissimo and Resinsas claims filed total $853,776.89
5  (after the adjustment noted in footnote 5).  Copies of the Alissimo and Resinas claims are
6  attached to the Joncich Declaration as Exhibits "K" to "N".

7        4.    *The Receiver's Claims and Those Filed by Mrs. Jones*

8            The Receiver filed four claims as to FTC and FTNC as follows, $907,173.74
9  against FTC, $638,619.50 against FTNC and a proof of interest in an unknown amount as to
10  each entity.  The Receiver filed his claims on behalf of amounts owing by FTC and FTNC to
11  Papa Lion, Inc. ("Papa Lion").  Copies of the Receiver's claims are attached to the Joncich
12  Declaration as Exhibits "O" to "R".

13          Mrs. Jones also filed claims with CMA, one each as a proof of interest for each of FTC
14  and FTNC.  Copies of the claims filed by Mrs. Jones are attached to the Joncich Declaration as
15  Exhibits "S" and "T".

16  F.    The Payments Made to Professionals and CMA's Fees.

17          CMA's accounting, Exhibit "I", also shows certain payments for "administrative" claims,
18  *i.e.,* those claims made on account of expenses related to the administration of the assignment
19  estates.  These amounts include, notably, (1) payments paid to CMA as its administrative fee,
20  $81,000.00 for FTC and $25,000.00 for FTNC for a total of $106,000, or six percent (6%) of the
21  first $1 million of the $2.2 million in sale proceeds, four percent (4%) of the next $1 million and
22  three percent (3%) of the amount in excess of $2 million; (2) payments for attorney's fees and
23  costs paid to (a) Schulman Hodges & Bastian LLP ("SHB"), attorneys for CMA, in the total
24  amount of $102,346.90; (b) Schumaker, Loop & Kendrick, North Carolina counsel to CMA in
25  the amount of $15,786.37; and (c) Broker & Associates, the attorney for FTC and FTNC which
26  Mr. Jones consulted prior to causing the assignments in the amount of $3,602.60, in connection
27  with documented the loan Mr. Jones made to CMA; (3) payments for "adjuster services" in the
28  amount of $14,736.53; (4) payments to "outside labor," in the amount of $67,683.37; and (5) a

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110824.2

ANDREWS KURTH LLP
600 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

1 | payment to Kibel Green in the amount of $6,081.56 as a consultant fee for services related to the

2 | sale.[6]

3 |     CMA's fees were calculated and paid according to the formula set forth above and as

4 | provided by the assignments executed by Mr. Jones. See Exhibits "F" and "G" to the Joncich

5 | Declaration. Most of the SHB's fees were related to advice related to the negotiation and

6 | consummation of the sale to HB&G, and thus SHB's work had a direct impact on the proceeds of

7 | the sale which were received. In the performance of its administration of assets, as assignee,

8 | CMA utilizes the services of adjusters to marshal assets, change locks, pack business records and

9 | provide basic bookkeeping services. CMA advances the expense for adjusters and reimburses its

10 | costs from the liquidation proceeds. The fees for "outside services" were paid to Management

11 | Pro Tem. CMA utilized the services of Management Pro Tem, an independent administrator, to

12 | function as supervisor for the operation of the Flex Trim Entities and the transfer of assets to the

13 | ultimate buyer. (See Joncich Declaration, *infra*, para. 15.)

14 | G.    The Cash Held by CMA.

15 |     As set forth on Exhibit "I", currently CMA holds approximately $1,567,422.64, including

16 | the proceeds of the sale to HB&G net of other amounts paid, including the professional fees

17 | outlined above, and other amounts as set forth therein. In addition, to complete the transactions

18 | outlined herein, CMA will have certain additional costs, which it estimates to be $40,552.49 (the

19 | "Proposed Reserve"), also as set forth on Exhibit "I". The Proposed Reserve is an estimate,

20 | only, and any amounts not actually spent will also be paid to the Receiver.[7]

21 | H.    The Litigation Claims CMA May Hold and the Proposed Indemnity.

22 |     As noted above, the Receiver contends that FTC and FTNC own valuable litigation

23 | claims against various parties, including Alissimo and Resinas. In addition, the Receiver

24 | believes that FTC and FTNC may hold claims (based on various grounds) for breach of duty

25 |

26 | [6] Exhibit "I" also shows a payment in the amount of $87,975.28. This payment was made to remove certain materials prior to the sale that had to be treated as hazardous waste under California law. (*See* Joncich Declaration, *infra*, para. 16.)

27 | [7] Under the terms of the assignments to CMA, CMA retains all interest earned on the funds it holds. *See* Exhibits

28 | "F" and "G" to the Joncich Declaration. Therefore, no interest is shown on Exhibit "I".

8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

1  against Mr. Jones, who was at all times an officer and/or director of each of FTC and FTNC.

2  The Receiver contends that millions of dollars may have been diverted from FTC and FTNC to

3  Alissmo and/or Resinas. (*See* Murphy Declaration, *infra*, para. 11.)

4      In addition to the claims discussed above, CMA may also hold avoidance claims under

5  California state law or fraudulent transfers claims not related to Alissimo and Resinas. CMA has

6  one year from the date of the assignments to assert the avoidance claims, but it has yet to make

7  an investigation into them in light of the Letter Agreement. (*See* Joncich Declaration, *infra*,

8  para. 18.)

9  I.     The Letter Agreement and the Transactions Contemplated Thereby.

10      The purpose of the Letter Agreement is to provide a mechanism by which CMA can

11  complete its work on the assignments while permitting any remaining disputes regarding the

12  funds generated by the sale of the operating assets of the Flex Trim Entities to be resolved in the

13  context of the marital dissolution action. In addition, should the Letter Agreement be approved

14  and consummated, it will have the benefit of allowing CMA to pay employee and third party

15  general unsecured claims in full, and will negate the need for CMA to investigate, let alone file,

16  preference actions. It also will help streamline proceedings by eliminating a second layer of

17  professionals, and it gives the Receiver control of litigation claims which the Receiver believes

18  to be valuable.

19      If the Letter Agreement is approved, $63,691.79 in priority and general unsecured

20  employee claims will be paid, and $233,399.55 in general unsecured trade claims will be paid by

21  CMA. Then, after allowance for the Proposed Reserve, $1,229,778.81 will be paid to the

22  Receiver to hold pending further order of the court.

23      Because it appears to be most efficient to allow the Receiver, pursuant to the authority

24  granted to him by the May 22 Order, to pursue or compromise the litigation claims he believes

25  FTC and FTNC possess, in the Letter Agreement the Receiver and CMA have agreed that CMA

26  will assign all such claims to the Receiver. However, the Letter Agreement also provides that if,

27  for some reason, the assignment of claims is determined not to have successfully provided the

28  Receiver with an appropriate basis to bring suit on the claims, CMA will agree to become a party

9

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

LOS:1108242.2

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

1  to litigation to remedy any such standing deficiency.  As set forth in the Letter Agreement,

2  should CMA's assistance be required, the Receiver will pay CMA's costs and attorney's fees, up

3  to a cap of the total amount of the actual cash paid to the Receiver by CMA.  More generally, the

4  Receiver will also indemnify CMA for any claims against it related to the assignments, also

5  capped at an amount equal to cash proceeds CMA pays to the Receiver.

6        All-in-all, the Receiver believes that the provisions of the Letter Agreement are

7  reasonable and appropriate to the current circumstances of this case.  By approving the Letter

8  Agreement and the transactions proposed thereby, the court will allow CMA to finish its work,

9  and substantial cash proceeds will be paid to the marital estate for disposition in accordance with

10  the court's further orders.

## III.    DISCUSSION

11

12  A.    The Letter Agreement and the Transactions Contemplated Thereby Should Be Approved.

13        1.    *The Legal Standard*

14        Subject to approval of the court, the receiver has discretion to take reasonable

15  steps to maximize the assets of the receivership estate.  (*See, e.g., People v. University of*

16  *Riverside,* (1973) 35 Cal.App.3d 572, 582; 2 Weil & Brown, *California Practice Guide: Civil*

17  *Procedure Before Trial* (TRG 2007) ¶ 9:770-771, p.9(II)-514 (receiver can petition for

18  instructions).)  With respect to the proposed disposition of assets by a Receiver, ". . . [T]he

19  primary function of the court is to manage or dispose of the property in the best manner possible

20  and for the best interest of the parties concerned." (*Gold v. Gold,* (2003) 114 Cal.App.4th 791,

21  806.)

22        The Receiver brings this motion consistent with his mandate from this court to

23  investigate and secure certain alleged marital assets, including FTC and FTNC, now reduced to

24  the cash proceeds held by CMA, and various unliquidated litigation claims.  In addition, CMA

25  and the Receiver believe that, given the timing of assignments executed by Mr. Jones on the eve

26  of the entry of the May 22 Order, court approval of payments to creditors by CMA, as

27  contemplated by the Letter Agreement, is called for in this instance on, at least, a prophylactic

28  basis.  Alternatively, if the court finds that it has no jurisdiction to evaluate any payments by

10

1  CMA, the Receiver asks the court consider this motion as a request for instructions regarding

2  whether or not the Receiver should take any action (setting aside whether or not such action

3  would be successful, a point CMA contests) to attempt to invalidate the assignments to CMA on

4  the grounds that the May 11 Order stripped Mr. Jones of his authority to make them, while

5  nonetheless preserving the Sale Order and the transactions closed in accordance therewith.

6        2.    *The Terms of the Letter Agreement Should Be Approved*

7        Based on the above, the Receiver asks that terms of the Letter Agreement sale be

8  approved, to the extent required, as a reasonable exercise of his business judgment in managing

9  the receivership estate. (*See University of Riverside, supra,* 35 Cal.App.3d at 585. *See also*

10  *Nulaid Farmers Ass'n v. LaTorre,* (1967) 252 Cal.App.2d 788, 791-793.). The Receiver submits

11  that it makes sense to pay the "true" third party claimants to the assignments in full, and allow

12  those disputes related to potential claims by the Receiver on behalf of Papa Lion and the

13  purported claims from Alissimo and Resinas to be resolved in the context of the marital

14  dissolution action.

15        Although it may be that the Receiver's claims on behalf of Papa Lion might, in certain

16  cases, receive a slightly greater distribution than is contemplated under the Letter Agreement,

17  such a result is speculative, and it is also the case that such claims might be subject to

18  recharacterization or subordination, reducing or eliminating their value. Moreover, keeping the

19  assignments open will doubtless lead to additional administrative fees by CMA and its attorneys,

20  as well as additional cost to the Receiver. There is no need for the marital estate to bear these

21  burdens. The savings that will result more than offsets any potential that the Receiver might

22  receive slightly more in certain other scenarios. (*See* Murphy Declaration, *infra,* para. 14.)

23  B.    The Assignment of Claims and the Proposed Indemnity Are Reasonable.

24        The Receiver believes that the cost and attorney's fee reimbursement provision is

25  reasonable in light of the fact that should CMA be required to participate in later litigation, it is

26  most likely that its costs will be nominal because the Receiver will be taking the "laboring oar"

27  in such matters. (*See* Murphy Declaration, *infra,* para. 15.) Also, with respect to the payment by

28  CMA of funds to the Receiver, as set forth in the Letter Agreement, the Receiver has agreed to

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION**
**FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

*[handwritten margin note, left side:] f finds go to receiver, they are w/in juris of FLC and we will have to file a 3rd party claim to those fnds (sue the receiver)*

1  indemnify CMA for any costs and attorney's fees it may incur with respect to these matters

2  should it be sued. (*See* Murphy Declaration, Exhibit "A".) Again, however, the indemnity is

3  limited to the amount of cash actually paid by CMA to the Receiver. As thus limited, the

4  indemnity essentially puts CMA in the same position it is now. To the extent any claims are

5  asserted against the funds it holds, once the funds are in the hands of the Receiver, those funds

6  are still available to satisfy those claims. In light of the circumscribed nature of the proposed

7  indemnity obligation, and the very real benefit of ending CMA's participation in these matters,

8  the Receiver believes that the indemnity provision in the Letter Agreement is reasonable and

9  should be approved. (*See* Murphy Declaration, *infra*, para. 15.)

10                          **IV.    CONCLUSION**

11        Based on the foregoing, the Receiver asks that the court:

12        1.    Approve the terms of the Letter Agreement and the transactions contemplated

13  thereby;

14        2.    Approve, to the extent required, CMA's accounting of the assignments of the

15  Flex Trim Entities, including CMA's payments of (a) attorney's fees and costs; (b) outside agent

16  fees; and (c) CMA's administrative fees, as permitted by California law;

17        3.    Approve the payment in full of all priority and general unsecured employee

18  claims, in the total amount of $63,691.79;

19        4.    Approve the payment in full of all "undisputed" general unsecured creditors

20  which have filed claims and which have not been determined by CMA to be Disallowed Claims,

21  in the amount of $233,399.55;

*[handwritten margin note, left side:] Nothing we can do about this?*

22        5.    Approve the assignment by CMA to the Receiver of certain litigation claims

23  CMA may hold by reason of the assignments;

24        6.    Approve, after the deduction of a reserve for certain items in the amount of

25  $40,552.49, the payment of all remaining funds held by CMA to the Receiver to be held in a

26  segregated account pending further order of the court;

27        7.    Approve the indemnity by the Receiver of CMA, in certain instances, and up to a

28  specified cap, as set forth in the Letter Agreement; and

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110524.2

1    8.    Make such further orders as are just and proper.

2                                          *Respectfully submitted,*

3    Dated: December _13_, 2007    **ANDREWS KURTH LLP**

4

5    By: _C. John M. Melissinos_

6                                          C. John M. Melissinos
                                           Terry L. Higham
7                                 Attorneys for Receiver DENNIS M. MURPHY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANDREWS KURTH LLP**
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

LOS:110524.2    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.