# EXHIBIT "A"

# MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF (1) LETTER AGREEMENT BETWEEN RECEIVER AND CMA; (2) CMA ACCOUNTING; (3) PAYMENTS TO EMPLOYEES; (4) PAYMENTS TO UNDISPUTED GENERAL UNSECURED CREDITORS; (5) ASSIGNMENT OF CLAIMS BY CMA; (6) PAYMENT OF REMAINING FUNDS BY CMA TO RECEIVER; AND (7) INDEMNITY BY RECEIVER OF CMA IN CERTAIN CASES

## I.    INTRODUCTION

Receiver Dennis M. Murphy (the "Receiver") seeks an order of the court approving a series of transactions that will allow Credit Managers Association of California, a California corporation, doing business as CMA Business Credit Services ("CMA"), assignee of Flex Trim California, Inc. ("FTC") and Flex Trim North Carolina, Inc. ("FTNC", and, collectively with FTC, the "Flex Trim Entities") to pay the undisputed claims arising from the assignments for the benefit of creditors of the Flex Trim Entities and then to pay the remaining amounts – and assign any remaining claims – to the Receiver. The Receiver believes that these transactions, if approved, will allow CMA and its professionals to complete their work with respect to the Flex Trim Entities, and will also allow any remaining disputes relating to the proceeds of the assignments to be resolved efficiently as part of the marital dissolution proceedings herein. In addition, and by design of the Receiver and CMA, this motion affords the court, Petitioner Allen A. Jones and Respondent Mary Kay Jones the opportunity to review CMA's accounting of its efforts to date with respect to the affairs of the Flex Trim Entities, before any payments are made by CMA to creditors.

Specifically, by this motion, the Receiver requests that the court approve the following:

1.    A letter agreement dated November 21, 2007 between the Receiver and CMA (the "Letter Agreement") (a copy of the Letter Agreement, which provides that it is subject to the approval of the court herein, is attached to the accompanying Declaration of Dennis M. Murphy ("Murphy Declaration") as Exhibit "A");

/ / /

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

EXHIBIT A PAGE 5

2.    CMA's accounting of the assignments of the Flex Trim Entities, including CMA's payments of (a) attorney's fees and costs; (b) outside agent fees; and (c) CMA's administrative fees, as permitted by California law (a copy of CMA's accounting is attached as Exhibit "I" to the accompanying Declaration of Michael L. Joncich (the "Joncich Declaration"));

3.    The payment in full of all employee claims;

4.    The payment in full of all "undisputed" general unsecured creditors which have filed claims;

5.    The assignment by CMA to the Receiver of certain litigation claims CMA may hold by reason of the assignments;

6.    After the deduction of a reserve for certain items in the amount of $40,553.49, the payment of all remaining funds held by CMA to the Receiver to be held in a segregated account pending further order of the court;

7.    The indemnity by the Receiver of CMA, in certain instances, and up to a specified cap, as set forth in the Letter Agreement.

This motion is being heard on shortened time pursuant to the court's order dated December 11, 2007. CMA is currently holding approximately $1,526,870.15 in free-and-clear cash. The Receiver believes that the relief sought herein is reasonable under the circumstances, is in the best interests of the marital estate, and is the most efficient manner in which to proceed in light of the funds CMA holds and the current posture of matters concerning the assignments.

## II.    FACTUAL BACKGROUND

A.    The Flex Trim Entities and Tahus.

Starting in the late 1980's, Mr. Jones built a construction supply business which employed proprietary technology and know-how to make and sell custom curved moldings made of resin (essentially, a specialized type of plastic) to the construction industry, including especially the residential home building industry. Ultimately, the business operated in California and the Southeast United States, through the Flex Trim Entities.

It is undisputed (for all purposes, the Receiver believes) that: (a) FTC is 100% owned by Mr. Jones, and (b) FTNC is 100% owned by Tahus, LLC, a Nevada limited liability company

2

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

EXHIBIT A PAGE 6

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

1   ("Tahus"), of which Mr. Jones is the sole member. Thus, it is undisputed that the stock of, or the

2   beneficial interests in, the Flex Trim Entities is a marital asset subject to the jurisdiction of this

3   court. (*See* Murphy Declaration, *infra*, para. 4.)

4   B.    The Jones Dissolution and the Appointment of the Receiver.

5        On April 3, 2002, Mr. Jones commenced the instant action. After almost five years of

6   proceedings, and frustrated with what she asserted to be the obfuscation and failure to fully

7   inform the court about the scope of his business affairs, on April 5, 2007, Mrs. Jones moved for

8   the appointment of a receiver over certain entities in which Mr. Jones had a partial or complete

9   interest. In conjunction with her motion, Mrs. Jones submitted three highly detailed declarations,

10  including numerous supporting exhibits, namely: (1) the Declaration of Mary Kay Jones; (2) the

11  Declaration of Richard A. Granowitz; and (3) the Declaration of Charlotte Reith. In further

12  support for her motion, on May 10, 2007, Mrs. Jones filed the Supplemental Declaration of

13  Richard A. Granowitz and the Supplemental Declaration of Charlotte K. Reith, CPA.

14       On May 11, 2007, after considering the evidence put forward by Mrs. Jones, and the

15  opposition thereto filed by Mr. Jones, which included his Responsive Declaration to OSC or

16  Notice of Motion, the Declaration of Allen A. Jones and the Declaration of Marvin M. Reiter,

17  CPA, the court appointed the Receiver with power over a number of entities, including the Flex

18  Trim Entities and Tahus. The court's order was set forth in its Minutes dated May 11, 2007 (the

19  "May 11 Minutes"). On May 22, 2007, the court signed its written Order Appointing Receiver

20  and Directing Certain Other Matters (the "May 22 Order"). Copies of the May 11 Minutes and

21  the May 22 Order are attached as Exhibits "B" and "C", respectively, to the Murphy

22  Declaration.[1]

23  C.    The Assignments for the Benefit of Creditors.

24       At some point prior to the entry of the May 22 Order, and apparently on or about May 21,

25  2007, Mr. Jones, purporting to act as the manager and sole owner of the Flex Trim Entities

26  and/or Tahus, assigned their assets to CMA, commencing a proceeding that is commonly

27  _____

28  [1] Other entities were also included within the scope of the Court's orders.

3

EXHIBIT A PAGE 7

LOS:110824.2

1  referred to as an "Assignment for the Benefit of Creditors" for each of Flex Trim California, Inc.

2  and Flex Trim North Carolina, Inc.  The parallel proceedings were commenced with documents

3  standard in such proceedings, known as "assignments," and the assignments for the Flex Trim

4  Entities are attached as Exhibits "F" and "G", respectively, to the Joncich Declaration.

5    Immediately subsequent to his appointment, the Receiver learned about the assignments.

6  The Receiver immediately informed counsel for Mrs. Jones and Mr. Jones, by letter, of the fact

7  of the assignments.  A copy of the Receiver's letter to counsel dated May 24, 2007, is attached as

8  Exhibit "D" to the Murphy Declaration.

9    Because, by all accounts, the Flex Trim Entities were in financial distress, and in that Mr.

10  Jones had initiated the assignment process, the Receiver decided not to immediately contest the

11  validity of them.[2]  (See Murphy Declaration, infra, at para. 9.)  However, the timing of the

12  assignments is suspicious, at least, and occurred after the May 11, 2007 hearing held by this

13  court and possibly after Mr. Jones' then-counsel in this proceeding had signed off on the May 22

14  Order that was ultimately executed by the court. (See Murphy Declaration, infra, at para. 9.)

15  D.    CMA's Auction Sale and the Receiver's Motion With Respect to It.

16    Consistent with its mandate, as assignee, to liquidate the Flex Trim Entities' assets, CMA

17  marketed the operating assets of the Flex Trim Entities and ran an auction process with respect to

18  them.  (See Joncich Declaration, infra, para. 3.)  Three companies posted a $100,000 deposit

19  required by CMA, executed preliminary letters of intent that qualified them to bid, and made

20  minimum bids of $1,000,000. (See Joncich Declaration, infra, para. 3.)  These bidders were

21  HB&G Building Products, Inc., a Delaware corporation ("HB&G"), West End Partners and

22  Woodgrain Millwork, Inc. ("Woodgrain").

23    An auction amongst the bidders was held on Friday, July 27, 2007, culminating in HB&G

24  being the winner with a high bid of $2.2 million.  (See Joncich Declaration, infra, para. 4.)

25  Subsequent to the auction, CMA and HB&G negotiated an Asset Purchase Agreement dated

26  August 20, 2007 (the "APA") between CMA and an affiliate of HB&G which was to hold the

---

27

28  [2]  The costs of the assignments are not insignificant, but the Receiver has not duplicated the efforts of CMA, its attorneys and agents. (See Murphy Declaration, infra, at para. 9.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

EXHIBIT A PAGE 8

LOS:110824.2

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

1   purchased assets.  On August 23, 2007, on an ex parte basis, the Receiver made his *ex parte*

2   Application by Receiver for Approval of Auction Sale and Related Transactions.   After

3   continuing the hearing to Friday, August 24, 2007, the court approved the Receiver's application

4   and the sale pursuant to its Order Approving Auction Sale and Related Transactions dated

5   August 24, 2007 (the "Sale Order").   A copy of the Sale Order is attached to the Murphy

6   Declaration as Exhibit "E".  Both Mr. Jones and Mrs. Jones appeared by counsel at the ex parte

7   hearing and the continued hearing.

8          The sale closed later on August 24, 2007, with CMA receiving net proceeds from the sale

9   of $2,064,053.97, after taking into account a "purchase price adjustment" that was made in

10  accordance with the terms of the APA and the $100,000 deposit which HB&G had previously

11  paid.   A copy of a closing statement for the sale is attached as Exhibit "H" to the Joncich

12  Declaration.[3]

13  E.     The Deadline for Filing Claims and the Claims Filed by Creditors.

14         1.     *General Creditor Claims*

15         Pursuant to notices sent out after the assignments, CMA provided notice to all

16  creditors that November 26, 2007 was the last deadline for filing claims in the assignments.

17  Thereafter, certain creditors filed claims, as listed on Exhibit "I".  However, if a creditor did not

18  file a claim, it is not entitled to be paid anything, regardless of what might otherwise be indicated

19  on the books of the Flex Trim Entities.  Also, in certain cases CMA has determined that although

20  the creditor filed a claim, the claim should be disallowed, and therefore CMA does not believe

21  that the claim is valid and CMA does not (and would not, absent the Letter Agreement) pay the

22  claim (collectively, the "Disallowed Claims").

23         Each of the Receiver, Mrs. Jones, Jose C. Corral, purporting to act on behalf of Alissimo

24  S.A. de C.V. ("Alissimo"), and Francisco Elorza, purporting to act on behalf of Resinas Laguna,

25  S.A. de C.V. ("Resinas") filed various claims against the proceeds held by CMA.  Not including

26  these latter claims, and also not including employee claims, discussed below, or the Disallowed

27

28  [3] Also, and as set forth on Exhibit "I" but not on the closing statement, CMA paid $50,000 to Woodgrain as a break-up fee.  This amount was authorized to be paid by the Sale Order.

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

5

EXHIBIT A PAGE 9

LOS:110824.2

1  Claims, the total of the claims filed against FTC was $74,666.67, and the total of the claims filed

2  against FTNC was $398,732.88. However, R&D Properties, Inc., the landlord of FTNC, has

3  agreed to reduce its claim from $336,000 to $96,000, and therefore the total amount of FTNC

4  claims (again excluding the claims of the Receiver, Mrs. Jones, Mr. Corral and Mr. Elorza and

5  Disallowed Claims) is now $158,732.88.[4]

6      2.  *Employee Claims*

7          In addition to claims filed by vendors and other entities which claimed they were

8  owed funds by FTC and FTNC, employees of the entities are also owed priority claims pursuant

9  to California Code of Civil Procedure §1204(a)(1) with respect unpaid wages and accrued

10  vacation and sick pay in the 90 days prior to the assignments. As noted on Exhibit "I", these

11  "priority" claims are $7,889.85 for FTC and $12,521.87 for FTNC, or a total of **$20,411.72**. In

12  addition, CMA has determined that certain of the hourly employees are also owed general

13  unsecured claims for wages and accrued vacation and sick pay due and owing at the time of the

14  assignments, which amounts do not constitute priority claims. As noted on Exhibit "I", these

15  general unsecured claims aggregate $14,926.27 for FTC and $28,353.80 for FTNC, or a total of

16  **$43,280.07**.

17      3.  *The Claims Purportedly Filed on Behalf of Alissimo and Resinas*

18          As noted above, Mr. Corral and Mr. Elorza filed two claims each with CMA,

19  purportedly on behalf of Alissimo and Resinas, respectively, as follows: with respect to FTC,

20  $98,613.91 (Corral/Alissimo) and $217,490.53 (Elorza/Resinas), and, with respect to FTNC,

21  $195,064.16[5] (Corral/Alissimo) and $385,221.21 (Elorza/Resinas). However, by the terms of

22  the May 22 Order, the Receiver is also the receiver of Alissimo and Resinas. Therefore, any

23  amounts that CMA would otherwise pay to these entities should be paid to the Receiver.

---

26  [4] As set forth on the accounting, there are seven (7) Disallowed Claims with respect to FTC and six (6) Disallowed Claims with respect to FTNC, for a combined total of $98,934.89. (*See* Joncich Declaration, Exhibit "I".)

27  [5] The claim $195,064.16 by Corral/Alissimo with respect to FTNC has been proposed to be allowed by CMA in the reduced amount of $152,451.24 to account for a credit due in the amount of $42,612.92. (*See* Joncich Declaration, *infra*, para. 11.)

EXHIBIT I  PAGE (0

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

LOS:110624.2

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

1    The Receiver contends that the Alissimo and Resinas claims may not be valid or entitled

2    to payment as stated.  Moreover, the Receiver contends that each of FTC and FTNC have

3    valuable claims against Alissimo and Resinas, which claims offset any amounts that would

4    otherwise be owing.  Together, the four Alissimo and Resinsas claims filed total $853,776.89

5    (after the adjustment noted in footnote 5).  Copies of the Alissimo and Resinas claims are

6    attached to the Joncich Declaration as Exhibits "K" to "N".

7        4.     *The Receiver's Claims and Those Filed by Mrs. Jones*

8    The Receiver filed four claims as to FTC and FTNC as follows, $907,173.74

9    against FTC, $638,619.50 against FTNC and a proof of interest in an unknown amount as to

10    each entity.  The Receiver filed his claims on behalf of amounts owing by FTC and FTNC to

11    Papa Lion, Inc. ("Papa Lion").  Copies of the Receiver's claims are attached to the Joncich

12    Declaration as Exhibits "O" to "R".

13    Mrs. Jones also filed claims with CMA, one each as a proof of interest for each of FTC

14    and FTNC.  Copies of the claims filed by Mrs. Jones are attached to the Joncich Declaration as

15    Exhibits "S" and "T".

16    F.    <u>The Payments Made to Professionals and CMA's Fees.</u>

17    CMA's accounting, Exhibit "I", also shows certain payments for "administrative" claims,

18    *i.e.*, those claims made on account of expenses related to the administration of the assignment

19    estates.  These amounts include, notably, (1) payments paid to CMA as its administrative fee,

20    $81,000.00 for FTC and $25,000.00 for FTNC for a total of $106,000, or six percent (6%) of the

21    first $1 million of the $2.2 million in sale proceeds, four percent (4%) of the next $1 million and

22    three percent (3%) of the amount in excess of $2 million; (2) payments for attorney's fees and

23    costs paid to (a) Schulman Hodges & Bastian LLP ("SHB"), attorneys for CMA, in the total

24    amount of $102,346.90; (b) Schumaker, Loop & Kendrick, North Carolina counsel to CMA in

25    the amount of $15,786.37; and (c) Broker & Associates, the attorney for FTC and FTNC which

26    Mr. Jones consulted prior to causing the assignments in the amount of $3,602.60, in connection

27    with documented the loan Mr. Jones made to CMA; (3) payments for "adjuster services" in the

28    amount of $14,736.53; (4) payments to "outside labor," in the amount of $67,683.37; and (5) a

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

7

EXHIBIT __ PAGE __

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110824.2

1  payment to Kibel Green in the amount of $6,081.56 as a consultant fee for services related to the

2  sale.[6]

3           CMA's fees were calculated and paid according to the formula set forth above and as

4  provided by the assignments executed by Mr. Jones.  See Exhibits "F" and "G" to the Joncich

5  Declaration.  Most of the SHB's fees were related to advice related to the negotiation and

6  consummation of the sale to HB&G, and thus SHB's work had a direct impact on the proceeds of

7  the sale which were received.  In the performance of its administration of assets, as assignee,

8  CMA utilizes the services of adjusters to marshal assets, change locks, pack business records and

9  provide basic bookkeeping services.  CMA advances the expense for adjusters and reimburses its

10 costs from the liquidation proceeds.  The fees for "outside services" were paid to Management

11 Pro Tem.  CMA utilized the services of Management Pro Tem, an independent administrator, to

12 function as supervisor for the operation of the Flex Trim Entities and the transfer of assets to the

13 ultimate buyer.  (*See* Joncich Declaration, *infra*, para. 15.)

14 G.      The Cash Held by CMA.

15          As set forth on Exhibit "I", currently CMA holds approximately $1,567,422.64, including

16 the proceeds of the sale to HB&G net of other amounts paid, including the professional fees

17 outlined above, and other amounts as set forth therein.  In addition, to complete the transactions

18 outlined herein, CMA will have certain additional costs, which it estimates to be $40,552.49 (the

19 "Proposed Reserve"), also as set forth on Exhibit "I".  The Proposed Reserve is an estimate,

20 only, and any amounts not actually spent will also be paid to the Receiver.[7]

21 H.      The Litigation Claims CMA May Hold and the Proposed Indemnity.

22          As noted above, the Receiver contends that FTC and FTNC own valuable litigation

23 claims against various parties, including Alissimo and Resinas.  In addition, the Receiver

24 believes that FTC and FTNC may hold claims (based on various grounds) for breach of duty

---

25

26 [6] Exhibit "I" also shows a payment in the amount of $87,975.28.  This payment was made to remove certain materials prior to the sale that had to be treated as hazardous waste under California law.  (*See* Joncich Declaration, *infra*, para. 16.)

27 [7] Under the terms of the assignments to CMA, CMA retains all interest earned on the funds it holds.  *See* Exhibits "F" and "G" to the Joncich Declaration.  Therefore, no interest is shown on Exhibit "I".

28

EXHIBIT A PAGE 12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

LOS:110824.2

1  against Mr. Jones, who was at all times an officer and/or director of each of FTC and FTNC.

2  The Receiver contends that millions of dollars may have been diverted from FTC and FTNC to

3  Alissmo and/or Resinas.  (*See* Murphy Declaration, *infra*, para. 11.)

4          In addition to the claims discussed above, CMA may also hold avoidance claims under

5  California state law or fraudulent transfers claims not related to Alissimo and Resinas.  CMA has

6  one year from the date of the assignments to assert the avoidance claims, but it has yet to make

7  an investigation into them in light of the Letter Agreement.  (*See* Joncich Declaration, *infra*,

8  para. 18.)

9  I.      The Letter Agreement and the Transactions Contemplated Thereby.

10         The purpose of the Letter Agreement is to provide a mechanism by which CMA can

11  complete its work on the assignments while permitting any remaining disputes regarding the

12  funds generated by the sale of the operating assets of the Flex Trim Entities to be resolved in the

13  context of the marital dissolution action.  In addition, should the Letter Agreement be approved

14  and consummated, it will have the benefit of allowing CMA to pay employee and third party

15  general unsecured claims in full, and will negate the need for CMA to investigate, let alone file,

16  preference actions.  It will also will help streamline proceedings by eliminating a second layer of

17  professionals, and it gives the Receiver control of litigation claims which the Receiver believes

18  to be valuable.

19         If the Letter Agreement is approved, $63,691.79 in priority and general unsecured

20  employee claims will be paid, and $233,399.55 in general unsecured trade claims will be paid by

21  CMA.  Then, after allowance for the Proposed Reserve, $1,229,778.81 will be paid to the

22  Receiver to hold pending further order of the court.

23         Because it appears to be most efficient to allow the Receiver, pursuant to the authority

24  granted to him by the May 22 Order, to pursue or compromise the litigation claims he believes

25  FTC and FTNC possess, in the Letter Agreement the Receiver and CMA have agreed that CMA

26  will assign all such claims to the Receiver.  However, the Letter Agreement also provides that if,

27  for some reason, the assignment of claims is determined not to have successfully provided the

28  Receiver with an appropriate basis to bring suit on the claims, CMA will agree to become a party

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

EXHIBIT A  PAGE 13

1    to litigation to remedy any such standing deficiency. As set forth in the Letter Agreement,

2    should CMA's assistance be required, the Receiver will pay CMA's costs and attorney's fees, up

3    to a cap of the total amount of the actual cash paid to the Receiver by CMA. More generally, the

4    Receiver will also indemnify CMA for any claims against it related to the assignments, also

5    capped at an amount equal to cash proceeds CMA pays to the Receiver.

6         All-in-all, the Receiver believes that the provisions of the Letter Agreement are

7    reasonable and appropriate to the current circumstances of this case. By approving the Letter

8    Agreement and the transactions proposed thereby, the court will allow CMA to finish its work,

9    and substantial cash proceeds will be paid to the marital estate for disposition in accordance with

10   the court's further orders.

11               **III.    DISCUSSION**

12   A.    The Letter Agreement and the Transactions Contemplated Thereby Should Be Approved.

13         1.    *The Legal Standard*

14         Subject to approval of the court, the receiver has discretion to take reasonable

15   steps to maximize the assets of the receivership estate. (*See, e.g., People v. University of*

16   *Riverside*, (1973) 35 Cal.App.3d 572, 582; 2 Weil & Brown, *California Practice Guide: Civil*

17   *Procedure Before Trial* (TRG 2007) ¶ 9:770-771, p.9(II)-514 (receiver can petition for

18   instructions).) With respect to the proposed disposition of assets by a Receiver, ". . . [T]he

19   primary function of the court is to manage or dispose of the property in the best manner possible

20   and for the best interest of the parties concerned." (*Gold v. Gold*, (2003) 114 Cal.App.4th 791,

21   806.)

22         The Receiver brings this motion consistent with his mandate from this court to

23   investigate and secure certain alleged marital assets, including FTC and FTNC, now reduced to

24   the cash proceeds held by CMA, and various unliquidated litigation claims. In addition, CMA

25   and the Receiver believe that, given the timing of assignments executed by Mr. Jones on the eve

26   of the entry of the May 22 Order, court approval of payments to creditors by CMA, as

27   contemplated by the Letter Agreement, is called for in this instance on, at least, a prophylactic

28   basis. Alternatively, if the court finds that it has no jurisdiction to evaluate any payments by

**ANDREWS KURTH LLP**
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

10

**EXHIBIT A PAGE 14**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110824.2

1   CMA, the Receiver asks the court consider this motion as a request for instructions regarding

2   whether or not the Receiver should take any action (setting aside whether or not such action

3   would be successful, a point CMA contests) to attempt to invalidate the assignments to CMA on

4   the grounds that the May 11 Order stripped Mr. Jones of his authority to make them, while

5   nonetheless preserving the Sale Order and the transactions closed in accordance therewith.

6       2.    *The Terms of the Letter Agreement Should Be Approved*

7       Based on the above, the Receiver asks that terms of the Letter Agreement sale be

8   approved, to the extent required, as a reasonable exercise of his business judgment in managing

9   the receivership estate. (*See University of Riverside, supra*, 35 Cal.App.3d at 585. *See also*

10  *Nulaid Farmers Ass'n v. LaTorre*, (1967) 252 Cal.App.2d 788, 791-793.). The Receiver submits

11  that it makes sense to pay the "true" third party claimants to the assignments in full, and allow

12  those disputes related to potential claims by the Receiver on behalf of Papa Lion and the

13  purported claims from Alissimo and Resinas to be resolved in the context of the marital

14  dissolution action.

15      Although it may be that the Receiver's claims on behalf of Papa Lion might, in certain

16  cases, receive a slightly greater distribution than is contemplated under the Letter Agreement,

17  such a result is speculative, and it is also the case that such claims might be subject to

18  recharacterization or subordination, reducing or eliminating their value. Moreover, keeping the

19  assignments open will doubtless lead to additional administrative fees by CMA and its attorneys,

20  as well as additional cost to the Receiver. There is no need for the marital estate to bear these

21  burdens. The savings that will result more than offsets any potential that the Receiver might

22  receive slightly more in certain other scenarios. (*See* Murphy Declaration, *infra*, para. 14.)

23  B.   The Assignment of Claims and the Proposed Indemnity Are Reasonable.

24      The Receiver believes that the cost and attorney's fee reimbursement provision is

25  reasonable in light of the fact that should CMA be required to participate in later litigation, it is

26  most likely that its costs will be nominal because the Receiver will be taking the "laboring oar"

27  in such matters. (*See* Murphy Declaration, *infra*, para. 15.) Also, with respect to the payment by

28  CMA of funds to the Receiver, as set forth in the Letter Agreement, the Receiver has agreed to

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

11

EXHIBIT _A_ PAGE 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

1  indemnify CMA for any costs and attorney's fees it may incur with respect to these matters

2  should it be sued. (*See* Murphy Declaration, Exhibit "A".)  Again, however, the indemnity is

3  limited to the amount of cash actually paid by CMA to the Receiver.  As thus limited, the

4  indemnity essentially puts CMA in the same position it is now.  To the extent any claims are

5  asserted against the funds it holds, once the funds are in the hands of the Receiver, those funds

6  are still available to satisfy those claims.  In light of the circumscribed nature of the proposed

7  indemnity obligation, and the very real benefit of ending CMA's participation in these matters,

8  the Receiver believes that the indemnity provision in the Letter Agreement is reasonable and

9  should be approved. (*See* Murphy Declaration, *infra*, para. 15.)

## IV.    CONCLUSION

11       Based on the foregoing, the Receiver asks that the court:

12       1.       Approve the terms of the Letter Agreement and the transactions contemplated

13  thereby;

14       2.       Approve, to the extent required,  CMA's accounting of the assignments of the

15  Flex Trim Entities, including CMA's payments of (a) attorney's fees and costs; (b) outside agent

16  fees; and (c) CMA's administrative fees, as permitted by California law;

17       3.       Approve the payment in full of all priority and general unsecured employee

18  claims, in the total amount of $63,691.79;

19       4.       Approve the payment in full of all "undisputed" general unsecured creditors

20  which have filed claims and which have not been determined by CMA to be Disallowed Claims,

21  in the amount of $233,399.55;

22       5.       Approve the assignment by CMA to the Receiver of certain litigation claims

23  CMA may hold by reason of the assignments;

24       6.       Approve, after the deduction of a reserve for certain items in the amount of

25  $40,552.49, the payment of all remaining funds held by CMA to the Receiver to be held in a

26  segregated account pending further order of the court;

27       7.       Approve the indemnity by the Receiver of CMA, in certain instances, and up to a

28  specified cap, as set forth in the Letter Agreement; and

EXHIBIT A PAGE 16

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

LOS:110524.2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

1    8.    Make such further orders as are just and proper.

2                              *Respectfully submitted,*

3    Dated:  December *13*, 2007    **ANDREWS KURTH LLP**

4

5                              By: *C. John M. Melissinos*
                                        C. John M. Melissinos
6                                       Terry L. Higham
                              Attorneys for Receiver DENNIS M. MURPHY
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANDREWS KURTH LLP**
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

EXHIBIT A PAGE 17

13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

LOS:110524.2

<u>**DECLARATION OF DENNIS M. MURPHY IN SUPPORT OF RECEIVER'S MOTION**</u>

<u>**FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**</u>

I, DENNIS M. MURPHY, DECLARE AS FOLLOWS.

1.    I am the Court-Appointed Receiver ("Receiver") in this matter.  I was appointed Receiver by written order of this court entered on May 22, 2007.  I have personal knowledge of the facts stated below, or have gained knowledge of them from pleadings and other documents I have obtained and reviewed or from the professionals employed to assist me herein, and, if called as a witness, I could and would testify competently thereto.

2.    Attached as Exhibit "A" hereto and incorporated herein by this reference is a true and correct copy of a letter agreement dated November 21, 2007 (the "Letter Agreement") between myself and Credit Managers Association of California, a California corporation, doing business as CMA Business Credit Services ("CMA").

3.    Starting in the late 1980's, Petitioner Allen A Jones built a construction supply business which employed proprietary technology and know-how to make and sell custom curved moldings made of resin (essentially, a specialized type of plastic) to the construction industry, including especially the residential home building industry.  Ultimately, the business operated in California and the Southeast United States, through Flex Trim California, Inc. ("FTC") and Flex Trim North Carolina, Inc. ("FTNC", and, collectively with FTC, the "Flex Trim Entities").

4.    It is undisputed (for all purposes, I believe) that:  (a) FTC is 100% owned by Mr. Jones, and (b) FTNC is 100% owned by Tahus, LLC, a Nevada limited liability company ("Tahus"), of which Mr. Jones is the sole member.  Thus, it is undisputed that the stock of, or the beneficial interests in, the Flex Trim Entities is a marital asset subject to the jurisdiction of this court.

5.    On April 3, 2002, Mr. Jones commenced the instant action.  After almost five years of proceedings, and frustrated with what she asserted to be the obfuscation and failure to fully inform the court about the scope of his business affairs, on April 5, 2007, Respondent Mary Kay Jones moved for the appointment of a receiver over certain entities in which Mr. Jones had a partial or complete interest.  In conjunction with her motion, Mrs. Jones submitted three highly

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

14

**EXHIBIT A PAGE B**

detailed declarations, including numerous supporting exhibits, namely: (1) the Declaration of Mary Kay Jones; (2) the Declaration of Richard A. Granowitz; and (3) the Declaration of Charlotte Reith. In further support for her motion, on May 10, 2007, Mrs. Jones filed the Supplemental Declaration of Richard A. Granowitz and the Supplemental Declaration of Charlotte K. Reith, CPA.

6.     On May 11, 2007, after considering the evidence put forward by Mrs. Jones, and the opposition thereto filed by Mr. Jones, which included his Responsive Declaration to OSC or Notice of Motion, the Declaration of Allen A. Jones and the Declaration of Marvin M. Reiter, CPA, the court appointed the Receiver with power over a number of entities, including the Flex Trim Entities and Tahus. The court's order was set forth in its Minutes dated May 11, 2007 (the "May 11 Minutes"). On May 22, 2007, the court signed its written Order Appointing Receiver and Directing Certain Other Matters (the "May 22 Order"). Attached respectively as Exhibits "B" and "C" hereto and incorporated herein by this reference are true and correct copies of the May 11 Minutes and the May 22 Order.

7.     At some point prior to the entry of the May 22 Order, and apparently on or about May 21, 2007, Mr. Jones, purporting to act as the manager and sole owner of the Flex Trim Entities and/or Tahus, assigned their assets to CMA, commencing a proceeding that is commonly referred to as an "Assignment for the Benefit of Creditors" for each of FTC and FTNC.

8.     Immediately subsequent to my appointment, I learned about the assignments. I immediately informed counsel for Mrs. Jones and Mr. Jones, by letter, of the fact of the assignments. Attached as Exhibit "D" hereto and incorporated herein by this reference is a true and correct copy of my letter to counsel dated May 24, 2007.

9.     Because, by all accounts, the Flex Trim Entities were in financial distress, and in that Mr. Jones had initiated the assignment process, I decided not to immediately contest the validity of them. However, the timing of the assignments is suspicious, at least, and occurred after the May 11, 2007 hearing held by this court and possibly after Mr. Jones' then-counsel in this proceeding had signed off on the May 22 Order that was ultimately executed by the court.

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

EXHIBIT $A$ PAGE $19$

15

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

1   The costs of the assignments are not insignificant, but I have not duplicated the efforts of CMA,

2   its attorneys and agents.

3        10.    On August 23, 2007, on an ex parte basis, I made my *ex parte* Application by

4   Receiver for Approval of Auction Sale and Related Transactions. After continuing the hearing

5   to Friday, August 24, 2007, the court approved my application and the sale pursuant to its Order

6   Approving Auction Sale and Related Transactions dated August 24, 2007 (the "Sale Order").

7   Attached as Exhibit "E" hereto and incorporated herein by this reference is a true and correct

8   copy of the Sale Order. Both Mr. Jones and Mrs. Jones appeared by counsel at the ex parte

9   hearing and the continued hearing.

10        11.    I contend that FTC and FTNC own valuable litigation claims against various

11   parties, including Alissimo S.A. de C.V. ("Alissimo") and Resinas Laguna S.A. de C.V.

12   ("Resinas"). In addition, I believe that FTC and FTNC may hold claims (based on various

13   grounds) for breach of duty against Mr. Jones, who was at all times an officer and/or director of

14   each of FTC and FTNC. I also contend that millions of dollars may have been diverted from

15   FTC and FTNC to Alissmo and/or Resinas.

16        12.    The purpose of the Letter Agreement is to provide a mechanism by which CMA

17   can complete its work on the assignments while permitting any remaining disputes regarding the

18   funds generated by the sale of the operating assets of the Flex Trim Entities to be resolved in the

19   context of the marital dissolution action. In addition, should the Letter Agreement be approved

20   and consummated, it will have the benefit of allowing CMA to pay employee and third party

21   general unsecured claims in full, and will negate the need for CMA to investigate, let alone file,

22   preference actions. It will also will help streamline proceedings by eliminating a second layer of

23   professionals, and it gives me control of litigation claims which I believe to be valuable.

24        13.    All-in-all, I believe that the provisions of the Letter Agreement are reasonable and

25   appropriate to the current circumstances of this case. By approving the Letter Agreement and the

26   transactions proposed thereby, the court will allow CMA to finish its work, and substantial cash

27   proceeds will be paid to the marital estate for disposition in accordance with the court's further

28   orders. I submit that it makes sense to pay the "true" third party claimants to the assignments in

EXHIBIT A PAGE 20

LOS:110824.2

1  full, and allow those disputes related to potential claims by me on behalf of Papa Lion, Inc.

2  ("Papa Lion") and the purported claims from Alissimo and Resinas to be resolved in the context

3  of the marital dissolution action.

4         14.    Although it may be that my claims on behalf of Papa Lion might, in certain cases,

5  receive a slightly greater distribution than is contemplated under the Letter Agreement, such a

6  result is speculative, and it is also the case that such claims might be subject to recharacterization

7  or subordination, reducing or eliminating their value. Moreover, keeping the assignments open

8  will doubtless lead to additional administrative fees by CMA and its attorneys, as well as

9  additional cost to me. There is no need for the marital estate to bear these burdens. The savings

10  that will result more than offsets any potential that I might receive slightly more in certain other

11  scenarios.

12         15.    I believe that the cost and attorney's fee reimbursement provision contained in the

13  Letter Agreement is reasonable in light of the fact that should CMA be required to participate in

14  later litigation, it is most likely that its costs will be nominal because I will be taking the

15  "laboring oar" in such matters. Also, with respect to the payment by CMA of funds to me, as set

16  forth in the Letter Agreement, I have agreed to indemnify CMA for any costs and attorney's fees

17  it may incur with respect to these matters should it be sued. Again, however, the indemnity is

18  limited to the amount of cash actually paid to me. As thus limited, the indemnity essentially puts

19  CMA in the same position it is now. To the extent any claims are asserted against the funds it

20  holds, once the funds are in my hands, those funds are still available to satisfy those claims. In

21  light of the circumscribed nature of the proposed indemnity obligation, and the very real benefit

22  of ending CMA's participation in these matters, I believe that the indemnity provision in the

23  Letter Agreement is reasonable and should be approved.

24         I declare under the penalty of perjury of the laws of the State of California that the

25  foregoing is true and correct. Executed this 13 day of December, 2007, at Pasadena,

26  California.

27

28

DENNIS M. MURPHY

EXHIBIT A PAGE 21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3100
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

## DECLARATION OF MICHAEL L. JONCICH IN SUPPORT OF RECEIVER'S

## MOTION FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

I, MICHAEL L. JONCICH, DECLARE AS FOLLOWS.

1.      I am an employee of Credit Managers Association of California, a California corporation, doing business as CMA Business Credit Services ("CMA") assignee of Flex Trim California, Inc. ("FTC") and Flex Trim North Carolina, Inc. ("FTNC", and, collectively, the "Flex Trim Entities"). I have personal knowledge of the facts stated below, or have gained knowledge of them from documents I have obtained and reviewed or from the professionals employed to assist me herein, and, if called as a witness, I could and would testify competently thereto.

2.      On May 21, 2007, Petitioner Allen A. Jones, purporting to act as the manager and owner of fifty percent (50%) or more of the shares of FTC and the manager of Tahus, LLC, a Nevada limited liability company ("Tahus"), the owner of fifty percent (50%) or more of the shares of FTNC, assigned their assets to CMA, commencing what is commonly referred to as an "Assignment for the Benefit of Creditors" for each of FTC and FTNC. The parallel proceedings were commenced with documents standard in such matters, known as "assignments." Attached respectively as Exhibits "F" and "G" hereto and incorporated herein by this reference are true and correct copies of the assignments made by Mr. Jones for FTC and FTNC.

3.      Consistent with its mandate, as assignee, to liquidate the Flex Trim Entities' assets, CMA marketed the operating assets of the Flex Trim Entities and ran an auction process with respect to them. Three companies posted a $100,000 deposit required by CMA, executed preliminary letters of intent that qualified them to bid, and made minimum bids of $1,000,000. These bidders were HB&G Building Products, Inc., a Delaware corporation ("HB&G"), West End Partners and Woodgrain Millwork, Inc. ("Woodgrain").

4.      An auction amongst the bidders was held on Friday, July 27, 2007, culminating in HB&G being the winner with a high bid of $2.2 million. Subsequent to the auction, CMA and HB&G negotiated an Asset Purchase Agreement dated August 20, 2007 (the "APA") between CMA and an affiliate of HB&G which was to hold the purchased assets.

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110824.2

EXHIBIT A PAGE 22

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

5.    The sale closed later on August 24, 2007, with CMA receiving net proceeds from the sale of $2,064,053.97, after taking into account a "purchase price adjustment" that was made in accordance with the terms of the APA and the $100,000 deposit which HB&G had previously paid.  Attached as Exhibit "H" hereto and incorporated herein by this reference is a true and correct copy of a closing statement for the sale.  Also, CMA paid $50,000 to Woodgrain as a break-up fee.

6.    Attached as Exhibit "I" hereto and incorporated herein by this reference is a true and correct copy CMA's accounting to date of the assignments of the Flex Trim Entities, including CMA's payments of (a) attorney's fees and costs; (b) outside agent fees; and (c) CMA's administrative fees, as permitted by California law.

7.    Pursuant to notices sent out after the assignments, CMA provided notice to all creditors that November 26, 2007 was the last deadline for filing claims in the assignments. Thereafter, certain creditors filed claims, as listed on Exhibit "I".  However, if a creditor did not file a claim, it is not entitled to be paid anything, regardless of what might otherwise be indicated on the books of the Flex Trim Entities.  Also, in certain cases CMA has determined that although the creditor filed a claim, the claim should be disallowed, and therefore CMA does not believe that the claim is valid and CMA does not (and would not, absent the Letter Agreement) pay the claim (collectively, the "Disallowed Claims").

8.    Each of the Receiver, Respondent Mary Kay Jones, Jose C. Corral, purporting to act on behalf of Alissimo S.A. de C.V. ("Alissimo"), and Francisco Elorza, purporting to act on behalf of Resinas Laguna, S.A. de C.V. ("Resinas") filed various claims against the proceeds held by CMA.  Not including these latter claims, and also not including employee claims, discussed below, or the Disallowed Claims, the total of the claims filed against FTC was $74,666.67, and the total of the claims filed against FTNC was $398,732.88.  However, R&D Properties, Inc., the landlord of FTNC, has agreed to reduce its claim from $336,000 to $96,000, and therefore the total amount of FTNC claims (again excluding the claims of the Receiver, Mrs. Jones, Mr. Corral and Mr. Elorza and Disallowed Claims) is now $158,732.88.

///

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

EXHIBIT A PAGE 23

19

9.    In addition to claims filed by vendors and other entities which claimed they were owed funds by FTC and FTNC, employees of the entities are also owed priority claims pursuant to California Code of Civil Procedure §1204(a)(1) with respect unpaid wages and accrued vacation and sick pay in the 90 days prior to the assignments. As noted on Exhibit "J", these "priority" claims are $7,889.85 for FTC and $12,521.87 for FTNC, or a total of **$20,411.72**. In addition, CMA has determined that certain of the hourly employees are also owed general unsecured claims for wages and accrued vacation and sick pay due and owing at the time of the assignments, which amounts do not constitute priority claims. As noted on Exhibit "J", these general unsecured claims aggregate $14,926.27 for FTC and $28,353.80 for FTNC, or a total of **$43,280.07**.

10.    Attached as Exhibit "J" hereto and incorporated herein by this reference is a true and correct copy of a spreadsheet showing the calculation of the amounts owing to employees. CMA filed claims on behalf of the employees, and the amounts to be paid include the amount of "employer" taxes that will be due in conjunction with the payments. I believe it is critical to pay the employees before year end both to provide them with extra cash prior to the holidays and to save costs by obviating the need to generate the additional W-2s that would be required if payments were made in 2008.

11.    Mr. Corral and Mr. Elorza filed two claims each with CMA, purportedly on behalf of Alissimo and Resinas, respectively, as follows: with respect to FTC, $98,613.91 (Corral/Alissimo) and $217,490.53 (Elorza/Resinas), and, with respect to FTNC, $195,064.16 (Corral/Alissimo) and $385,221.21 (Elorza/Resinas). The claim $195,064.16 by Corral/Alissimo with respect to FTNC has been proposed to be allowed by CMA in the reduced amount of $152,451.24 to account for a credit due in the amount of $42,612.92. After that adjustment, the four Alissimo and Resinsas claims total $853,776.89. Attached respectively as Exhibits "K" to "N" hereto and incorporated herein by this reference are a true and correct copies of the Alissimo and Resinas claims.

12.    The Receiver filed four claims as to FTC and FTNC as follows, $907,173.74 against FTC, $638,619.50 against FTNC and a proof of interest in an unknown amount as to

20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110824.2

EXHIBIT A PAGE 24

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

1    each entity.  The Receiver filed his claims on behalf of amounts purportedly owing by FTC and

2    FTNC to Papa Lion, Inc. ("Papa Lion").  Attached respectively as Exhibits "O" to "R" hereto

3    and incorporated herein by this reference are a true and correct copies of the claims filed by the

4    Receiver.

5        13.    Mrs. Jones filed claims with CMA, one each as a proof of interest for each of FTC

6    and FTNC.  Attached respectively as Exhibits "S" and "T" hereto and incorporated herein by this

7    reference are a true and correct copies of the claims filed by Mrs. Jones.

8        14.    CMA's accounting, Exhibit "I", shows certain payments for "administrative"

9    claims, i.e., those claims made on account of expenses related to the administration of the

10    assignment estates.   These amounts include, notably, (1) payments paid to CMA as its

11    administrative fee, $81,000.00 for FTC and $25,000.00 for FTNC for a total of $106,000, or six

12    percent (6%) of the first $1 million of the $2.2 million in sale proceeds, four percent (4%) of the

13    next $1 million and three percent (3%) of the amount in excess of $2 million; (2) payments for

14    attorney's fees and costs paid to (a) Schulman Hodges & Bastian LLP ("SHB"), attorneys for

15    CMA, in the total amount of $102,346.90; (b) Schumaker, Loop & Kendrick, North Carolina

16    counsel to CMA in the amount of $15,786.37; and (c) Broker & Associates, the attorney for FTC

17    and FTNC which Mr. Jones consulted prior to causing the assignments in the amount of

18    $3,602.60, in connection with documented the loan Mr. Jones made to CMA; (3) payments for

19    "adjuster services" in the amount of $14,736.53; (4) payments to "outside labor," in the amount

20    of $67,683.37; and (5) a payment to Kibel Green in the amount of $6,081.56 as a consultant fee

21    for services related to the sale.

22        15.    CMA's fees were calculated and paid according to the formula set forth above

23    and as provided by the assignments executed by Mr. Jones.  Most of the SHB's fees were related

24    to advice related to the negotiation and consummation of the sale to HB&G, and thus SHB's

25    work had a direct impact on the proceeds of the sale which were received.  In the performance of

26    its administration of assets, as assignee, CMA utilizes the services of adjusters to marshal assets,

27    change locks, pack business records and provide basic bookkeeping services.  CMA advances

28    the expense for adjusters and reimburses its costs from the liquidation proceeds.  The fees for

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

EXHIBIT __ PAGE 25

21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION
FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.

LOS:110824.2

"outside services" were paid to Management Pro Tem.    CMA utilized the services of Management Pro Tem, an independent administrator, to function as supervisor for the operation of the Flex Trim Entities and the transfer of assets to the ultimate buyer.

16.    Exhibit "I" also shows a payment in the amount of $87,975.28.  This payment was made to remove certain materials prior to the sale that had to be treated as hazardous waste under California law.

17.    As set forth on Exhibit "I", currently CMA holds approximately $1,567,422.64, including the proceeds of the sale to HB&G net of other amounts paid, including the professional fees and other amounts as set forth therein.  In addition, to complete the transactions outlined in the Letter Agreement, CMA will have certain additional costs, which it estimates to be $40,552.49 (the "Proposed Reserve"), also as set forth on Exhibit "I".  The Proposed Reserve is an estimate, only, and any amounts not actually spent will also be paid to the Receiver.

18.    In addition to the claims discussed above, CMA may also hold avoidance claims under California state law or claims for recovery of fraudulent transfers not related to Alissimo and Resinas.  CMA has one year from the date of the assignments to assert the avoidance claims, but it has yet to make an investigation into them in light of the Letter Agreement.

I declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.  Executed this _13th_ day of December, 2007, at Burbank, California.

MICHAEL L. JONCICH

EXHIBIT A PAGE 26

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF LETTER AGREEMENT WITH CMA, ETC.**

LOS:110824.2

601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

**EXHIBIT "B"**

**Home**
**Pending Hearings**

**Complaints/Parties**
**Case Report**

**Actions**

**Minutes**

**Action:** (Choose)

COURT TRIAL -- ESTIMATED TRIAL LENGTH HRS.
05/11/2007 - 8:30 AM DEPT. S14

COMMISSIONER MICHAEL J. TORCHIA
CLERK: JOHN FILES
DEONNA FINAZZO
BAILIFF: PAUL A. BARRIE

APPEARANCES:
ATTORNEY J. NOLAN PRESENT FOR PLAINTIFF/PETITIONER.
ATTORNEY R. GRANOWITZ PRESENT FOR DEFENDANT/RESPONDENT.

PROCEEDINGS:
SETTLEMENT CONFERENCE HELD.

THE COURT APPOINTS DENNIS MURPHY AS TEMPORARY RECEIVER OF THE BUSINESS OF THE PETITIONER. MR
MURPHY TO SUBMIT A REPORT TO COUNSEL AND THE COURT IN 90 DAYS. MR MURPHYS FEES ARE TO BE NO
MORE THAN $200 PER HOUR.

THE PARTIES ACCOUNTANTS MAY CONSULT WITH THE RECEIVER. COUNSEL AND PARTIES ARE NOT TO CONSULT
RECEIVER UNLESS REQUESTED BY THE RECEIVER.

COURT AUTHORIZES $35,000 BE RELEASED FROM THE BUSINESS PROCEEDS TO RESPONDENTS COUNSEL FOR
ATTORNEY FEES WITHOUT PREJUDICE.

ALL SUPPORT ORDERS ARE TO REMAIN IN FULL FORCE AND EFFECT AND ARE TO BE PAID FROM THE BUSINEES
BY THE RECEIVER.

REZ-LINE, CIRCLE TRIM MATERIALS, FLEX TRIM NORTH CAROLINA, PAPA LION, FLEX TRIM CALIFORNIA,
I-TRIM, HYDRO-FOG, JONESFOAM, ALISSIMO, MOLDFLEX, RESINAS LUGUNA, SANDSTONE, MOUNT CREEK
VENTURES ARE JOINED TO THIS PROCEEDING.

COURT AND COUNSEL DISCUSS VARIOUS INTERLINEATIONS TO PETITIONERS PROPOSED ORDER. COUNSEL TO
PREPARE FORMAL ORDER.
02:00
THOMAS LYNTEROPOULOS IS SWORN AND TESTIFIES AS WITNESS FOR RESPONDENT.
12:15
WITNESS THOMAS LYNTEROPOULOS EXCUSED.

HEARING RE: MANDATORY SETTLEMENT CONFERENCE SET FOR 09/20/07 AT 08:30 IN DEPARTMENT S14.
ACTION - COMPLETE
PREVIOUS MINUTES PRINTED
== MINUTE ORDER END ===



Exh. B - Page 4
EXHIBIT B PAGE 22

# EXHIBIT "C"

May 23 2007 2:49PM     GwW LAW

9098830544                                    P.2

05-11-2007   03:42PM   From-GRESHAM SAVAGE NOLAN TILDEN LLP     9518842150     T-286  P.002/007  F-716

FILED -Central District
SUPERIOR COURT
SAN BERNARDINO COUNTY

MAY 2 2 2007

By _____
Deputy

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN BERNARDINO

ALLEN A. JONES,

    Petitioner,

vs.

MARY KAY JONES,

    Respondent.

CASE NO. SBFSS 64717

**ORDER APPOINTING RECEIVER AND DIRECTING CERTAIN OTHER MATTERS**

    The Order to Show Cause application of Respondent, MARY KAY JONES, seeking certain orders and appointments came on regularly for hearing on May 11, 2007 with Petitioner, ALLEN A. JONES, being present in court, represented by his counsel of record, Gresham Savage Nolan and Tilden by John C. Nolan, and Respondent, MARY KAY JONES, being present in court, represented by her counsel of record, Granowitz, White and Weber, by Richard A. Granowitz, and counsel for the parties having reviewed and discussed said application in detail with the Court, in chambers; and the Court having reviewed all of the pleadings, declarations and exhibits filed herein by both parties:

///

///

///

///

EXHIBIT C PAGE 28                    Exh. C - Page 5

May 23 2007 2:49PM    GWW LAW                    9098890544                    P.3

05-21-2007   03:42pm   From-GRESHAM SAVAGE NOLAN TILDEN LLP        8518842180        T-205  P.002/007  F-716

IT IS HEREBY ORDERED AS FOLLOWS:

1.    There are joined to these proceedings the following entities:

    a.    Rez-Line, Incorporated;

    b.    Circle Trim Materials, Inc.;

    c.    Flex Trim North Carolina, Inc.;

    d.    Papa Lion, Inc.;

    e.    Flex Trim California, Inc.;

    f.    I-Trim;

    g.    Hydro Fog, Inc.;

    h.    Jonesfoam;

    i.    Trim Flex of California, Inc.;

    j.    Tahus, LLC;

    k.    Alissimo S.A. de C.V.;

    l.    Moldflex S.A. de C.V.;

    m.    Mountcreek Ventures, Corp.;

    n.    Resinas Laguna S.A. de C.V.;

    o.    Carter Millwork, Inc.; and,

    p.    Sandstone, LLC;

all of the foregoing joined parties will hereinafter be individually and collectively referred to as "the Entities".

2.    Chicago Title is directed to produce to Respondent's attorney a copy of its file regarding Escrow Number 27030727-62, relating to real property located at 660 East Mariposa Drive, Redlands, California.

3.    Petitioner is enjoined and restrained from removing any information from any business in which he has a community or separate interest including, but not limited, to all books, records and information on any computers thereof.

4.    Dennis M. Murphy is appointed temporary receiver of each of "the Entities" and their subsidiaries and affiliates, with full powers of an equity receiver, including (but not limited

- 2 -



05-23-2007  08:48pm   From-GRESHAM SAVAGE NOLAN TILDEN LLP        9516842160        T-208   P.004/007   F-718

to) full power over all funds, assets, collateral, premise (whether owned, leased, occupied or otherwise controlled), choses in actions, books, records, papers, and other real or personal property, including notes, deeds of trust, and other interest in real property belonging to, managed by, or in the possession or control of the Entities, and any of their subsidiaries and affiliates. Mr. Murphy is immediately authorized, empowered, and directed to:

A.  Access and to take custody and control of all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers, and other real property including notes, deeds of trust, and other interest in real property of or managed by the Entities and their subsidiaries and affiliates, with full power to sue, foreclose, marshal, collect, receive, and take into possession all such property;

B.  control and be added as the sole authorized signatory for all accounts of the Entities and their subsidiaries and affiliates, including all accounts over which their officers, employees or agents, have signatory authority, at any bank, title company, escrow agent, financial institution, or brokerage firm, which has possession, custody, or control of any assets or funds of the Entities or which maintain accounts over which the Entities and/or any of their officers, employees, or agents have signatory authority;

C.  conduct such investigation as may be necessary to locate and account for all assets of, or managed by, the Entities and their subsidiaries and affiliates, and to employ attorneys, accountants, and other person to assist in such investigation;

D.  take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets of, the Entities and their subsidiaries and affiliates;

E.  make an accounting to this Court of the assets and financial condition of the Entities and the assets under their management, including all notes, deeds of trust, and other interest in real property, and to file the accounting with the Court and deliver copies to all parties by August 15, 2007;

- 3 -

GRESHAM SAVAGE
NOLAN & TILDEN,
A Professional Corporation
Attorneys at Law, for the
Riverside, CA 92501
(951) 684-2171

ORDER APPOINTING RECEIVER AND DIRECTING CERTAIN OTHER MATTERS

EXHIBIT C PAGE 30

F.    make such payments and disbursements from the funds and assets taken into custody, control and possession or thereafter received by him, and to incur, or authorize the making of such agreements as may be necessary and advisable in discharging his duties as temporary receiver;

G.    access, monitor, and review all mail (including email) of the Entities in order to review such mail which he deems relevant to the business of these companies, and the discharging of his duties as receiver;

H.    exercise all of the lawful powers of the Entities and their officers, directors, employees, representatives, or persons who exercise similar powers and perform similar duties.

5.    Petitioner shall, within five court days of the date of this Order prepare and deliver to said Receiver a detailed schedule of all the Entities' assets, including all real and personal property exceeding $5,000.00 in value, and all bank, securities, futures, and other accounts identified by institution, branch address, and account number. The accountings shall include a description of the source(s) of all such assets. Such accounts shall be filed with the Court and copies shall also be delivered to Respondent's counsel.

6.    Except as otherwise ordered by this Court, both Petitioner and Respondent, the Entities, and their officers, agents, servants, employees, attorneys, subsidiaries and affiliates, and those persons in active concert or participation with any of them, who receive actual notice of this Order, by personal service or otherwise, are temporarily restrained from directly or indirectly, destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, any documents, including all books, records, computer programs, computer files, computer printouts, correspondence, memoranda, brochures, or any other documents of any kind in their possession, custody, or control, however created, produced, or stored whether manually or electronically stored pertaining to any of the Entities.

7.    That the Entities, and their subsidiaries and affiliates, and their officers, agents, servants, employees, and attorneys, and any other persons who are in custody, possession, or control of any assets, collateral, books, records, papers, notes, deeds of trust, or other interests in

- 4 -

EXHIBIT  C  PAGE 31                    Exh   C - Page 8

05-03-2007   03:43pm   From-GRESHAM SAVAGE NOLAN TILDEN LLP         9519642150         T-205   P.006/007   F-715

real property, or other property of, or managed by the Entities shall forthwith give access to and

control of such property to said temporary receiver.

8.    No counsel for either party is to have any unilateral contact with the temporary

receiver, however, the accountants for either party may do so, but no such contact shall be

deemed to be a privileged communication.

9.    The temporary receiver and anyone working on his behalf shall bill no more than

$190.00 collectively or in total average per hour for services performed hereunder.

10.    The temporary receiver is to make payment to Respondent of $12,150.00 per

month from the Entities as replacement for the spousal and child support previously in place in

this proceeding.

11.    A hearing on the Report of the temporary receiver will be held on September 20,

2007, at 8:30 a.m. in Department S-14.

12.    Either party may object to the Report or any fee charged by the temporary

receiver.

13.    Payment of $35,000.00 is to be made to Respondent's counsel from the funds of

the Entities by June 11, 2007, said sum to be as attorneys fees and/or costs, with the Court

reserving the right to re-characterize said payment at a later time.

///
///
///
///
///
///
///
///
///
///
///
///
///

GRESHAM SAVAGE
NOLAN & TILDEN,

- 5 -

ORDER APPOINTING RECEIVER AND DIRECTING CERTAIN OTHER MATTERS

EXHIBIT  C  PAGE 32

Exh.  C - Page 9

14.   Nothing herein contained shall be deemed in any manner to be an admission or acknowledgement by Petitioner that any of the Entities are community property, or that they are controlled by either Party.

Dated: 5-22, 2007

_____
JUDGE OF THE SUPERIOR COURT

APPROVED AS TO FORM AND CONTENT:

Dated: May 21, 2007

GRESHAM SAVAGE NOLAN & TILDEN,
A Professional Corporation

By: _____
John C. Nolan
Attorneys for Petitioner
ALLEN A. JONES

Dated: May 21, 2007

GRANOWITZ, WHITE AND WEBER

By: _____
Richard A. Granowitz
Attorneys for Respondent
MARY KAY JONES

THE DOCUMENT TO WHICH THIS CERTIFICATION IS
ATTACHED IS A FULL, TRUE AND CORRECT COPY OF
THE ORIGINAL ON FILE AND OF RECORD IN MY OFFICE.

MAY 2 2 2007

ATTEST
Clerk of the Superior Court of the State of
California, in and for the County of
San Bernardino.

By _____ Deputy

GRESHAM SAVAGE
NOLAN & TILDEN

ORDER APPOINTING RECEIVER AND DIRECTING CERTAIN OTHER MATTERS

Exh. C - Page 10

EXHIBIT C PAGE 33