1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11  SINDICATO DE EMPLEADOS Y                CASE NO. 07-CV-2365 W (LSP)
    TRABAJADORES DE LA
12  INDUSTRIA EL CAMPO Y EL                 **ORDER DENYING**
    COMERCIO DEL ESTADO 29                  **PLAINTIFFS' MOTION FOR A**
13  C.R.O.M. et. al.,                       **TEMPORARY RESTRAINING**
                                            **ORDER (Doc. Nos. 4, 5)**
14                           Plaintiffs,

15       vs.

16  CREDIT MANAGERS
    ASSOCIATION OF CALIFORNIA,
17  INC.,

18                           Defendant.

19

20        On December 18, 2007 Plaintiffs, two Mexican labor unions, commenced an

21  action against Defendant Credit Managers Association of California ("CMA") alleging

22  breach of contract and seeking accounting and equitable relief. (Doc. No. 1.)  Pending

23  before the Court is Plaintiffs' motion for a Temporary Restraining Order ("TRO") to

24  restrain CMA from paying out $896,389.81 to certain creditors, to a temporary receiver

25  appointed by a California Family Law Court, or to anyone else that may have a claim

26  to the funds.  The Court decides the matter on the papers submitted and without oral

27  argument.  See S.D. Cal. Civ. R. 7.1(d.1).  For the following reasons, the Court

28  **DENIES** Plaintiffs' motion for a TRO.

## I. BACKGROUND

Plaintiffs are two Mexican labor unions whose constituent members are the employees of two Mexican companies, Alissimo S.A. de C.V. ("Alissimo") and Resinas Laguna, S.A. de C.V. ("Resinas"). (*Mot. for TRO* 2-4.) Both Alissimo and Resinas did substantial business with two American companies, FlexTrim California, Inc. and FlexTrim North Carolina, Inc. (collectively, "FlexTrim"). (*Id.*) Plaintiffs allege that FlexTrim owes Alissimo and Resinas $896,389.81 for their products and/or services. (*Mot. for TRO* 3.) According to Plaintiffs, FlexTrim is now insolvent.[1] (*Mot. for TRO* 2.)

Allen and Mary Kay Jones are two formerly married individuals currently involved in property dissolution proceedings in California Family Law Court ("California Court"). (*Id.* 3.) The California Court appointed Dennis Murphy ("Murphy") temporary receiver of certain entities and affiliates which were alleged to form part of the Jones' marital estate. Allen Jones is for purposes of this litigation the owner of FlexTrim. (*Richman Decl. Ex. F* 2-3.)

Defendant CMA is a non-profit corporation which appears to assist companies, like FlexTrim, in managing assets and satisfying creditors. (*Richman Decl. Ex. A.*) On or about May 21, 2007 FlexTrim assigned all its business assets to CMA for liquidation and payment of creditor claims. (*Mot. for TRO* 2.)

On May 22, 2007 Plaintiff alleges that Alissimo and Resinas were joined in the marital dissolution proceedings "without notice, opportunity to object, or any due process." (*Mot. for TRO* 3.) Apparently, Alissimo's and Resinas's bank accounts were frozen and their assets seized.[2] (*Id.*) It is unclear when Alissimo and Resinas learned about the asset freeze and seizure, but it appears to be shortly after the May, 22 2007 order. (*Jose Corral Decl.* ¶ 15; *Francisco Elorza Decl.* ¶ 15.) Although Plaintiffs' motion

---

[1]Plaintiff describes FlexTrim as commencing a "common law bankruptcy proceeding," an unusual description.

[2]Defendant's opposition disputes that the receiver has taken steps to shut down Alissimo or Resinas or seize their assets. (*Def.'s Opp'n* 4.)

07cv2365W

1   fails to connect the dots, Alissimo/Resinas both seem to insinuate that they are

2   separately owned companies (*i.e.*, not part of the marital estate) and the California

3   court should not have been put them under the stewardship of receiver Murphy. (*Jose*

4   *Corral Decl.* ¶ 11-14; *Francisco Elorza Decl.* ¶ 12-14.)

5       On July 6 and 13, 2007 Alissimo and Resinas made respective claims to CMA

6   for the monies owed to them by FlexTrim. (*Richman Decl. Ex. C.*)  Plaintiffs allege that

7   these monies have not yet been paid. (*Mot. for TRO* 5.)

8       Plaintiffs, the two Mexican labor unions, are allegedly owed significant sums for

9   unpaid wages and benefits by Alissimo and Resinas.  On December 13, 2007 Plaintiffs

10  (litigating in the state labor court of Baja California in Tijuana [hereinafter, "Mexican

11  Court]) received an order temporarily freezing both companies' assets in order to satisfy

12  the payment of wages. (*Mot. for TRO* 4.)  According to Plaintiffs, under the Mexican

13  Constitution and Labor Code employees have preferential rights over all other

14  creditors. (*Id.*)  However, it is unclear whether Alissimo and/or Resinas are actually

15  insolvent. (*See Quijano Decl.* ¶ 6.)  Presumably, Plaintiffs assume they have standing

16  to pursue this suit because they should be able to "step into the shoes" of their creditor-

17  employers and recoup assets from CMA.

18      On December 19, 2007 Plaintiffs moved for a TRO because on December 21,

19  2007 the California Court is scheduled to hear receiver Murphy's motion to approve

20  a "letter agreement" between CMA and Murphy to distribute the marital estate.[3] (*Mot.*

21  *for TRO* 5.)  Plaintiffs fear that the letter agreement's terms do not satisfy Alissimo's

22  or Resinas's open claims and shifts the balance of FlexTrim's assets (assigned to CMA)

23  to Murphy. (*Id.*)  Plaintiffs fear that if Alissimo/Resinas do not get paid by CMA,

24  Alissimo/Resinas will be unable to pay Plaintiffs. (*Id.*)  Thus, Plaintiffs seek an order

25  restraining CMA from paying $896,389.81 to FlexTrim creditors, receiver Murphy, or

26

27      [3]Because Alan Jones owns FlexTrim, dissolving the marital estate necessarily implicates
    dividing FlexTrim's assets and liabilities.  Apparently, this requires coordination between
28  receiver Murphy (responsible for distributing marital assets) and CMA (responsible for
    distributing FlexTrim's assets). (*Mot. for TRO* 5.)

1  anyone else claiming an interest.  On December 20, 2007—after Plaintiffs provided an
2  extremely brief notice period—Defendant CMA opposed the TRO.

3

4  **II.    LEGAL STANDARD**

5           The Federal Rules of Civil Procedure outline the procedures a federal court must
6  follow when deciding whether to grant a temporary restraining order.  <u>See</u> Fed. R. Civ.
7  P. 65.  The standard for granting a temporary restraining order is the same as the
8  standard for entering a preliminary injunction.  <u>Bronco Wine Co. v. U.S. Dep't of</u>
9  <u>Treasury</u>, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996); <u>Franklin v. Scribner</u>, Civil No. 07-
10 0438 BTM (LSP), 2007 WL 1491100, at *3 (S.D. Cal. May 21, 2007).  The Ninth
11 Circuit has prescribed the following equitable criteria for determining whether to grant
12 injunctive relief:

13          (1) the likelihood of the moving party's success on the merits; (2) the
            possibility of irreparable injury to the moving party if relief is not granted;
14          (3) the extent to which the balance of hardships favors the respective
15          parties; and (4) in certain cases, whether the public interest will be
            advanced by granting the preliminary relief.  The moving party must show
16          either (1) a combination of probable success on the merits and the
            possibility of irreparable harm, or (2) the existence of serious questions
17          going to the merits, the balance of hardships tipping sharply in its favor,
            and at least a fair chance of success on the merits... [T]he required degree
18          of irreparable harm increases as the probability of success decreases.
19

20 <u>Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.</u>, 367 F.3d 1108, 1111
21 (9th Cir. 2004) (quoting <u>Miller ex. rel. N.L.R.B. v. Cal. Pac. Med. Ctr.</u>, 19 F.3d 449,
22 456 (9th Cir. 1994)).  The temporary restraining order "should be restricted to serving
23 [its] underlying purpose of preserving the status quo and preventing irreparable harm
24 just so long as is necessary to hold a hearing, and no longer."  <u>Granny Goose Foods, Inc.</u>
25 <u>v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70</u>, 415 U.S. 423, 439 (1974);
26 <u>accord</u> <u>L.A. Mem'l Coliseum Comm'n v. Nat'l Football League</u>, 634 F.2d 1197, 1200
27 (9th Cir. 1980); <u>Del Toro-Chacon v. Chertoff</u>, 431 F. Supp. 2d 1135, 1139-40 (W.D.
28 Wash. 2006).

1    **III.    DISCUSSION**

2        **A.    Threshold Issues**

3        There are several threshold issues which make granting Plaintiffs' TRO motion

4    particularly difficult.  First, Plaintiffs filed the TRO on mid-day Wednesday and wished

5    to obtain a hearing and order by Thursday afternoon.  This provided Defendant—and

6    the Court—with very little time to respond to Plaintiffs' request, especially in the week

7    prior to Christmas.   Although providing such short notice is not unheard of,

8    circumstances are more forgiving when the defendant knows a TRO application may

9    be forthcoming.  See Squillacote v. Meat & Allied Food Workers, 534 F.2d 735, 743

10   (7th Cir. 1976) (holding sufficient notice where opposing counsel was given TRO

11   documents 24 hours before the order was entered, but had several days warning  that

12   TRO may be filed).[4]  Here, this does not appear to be the case.

13       Additionally, Plaintiffs' Motion for TRO is devoid of any legal analysis.

14   Although TROs necessarily turn on their underlying facts, Plaintiffs do nothing to

15   assure the Court that, given the complicated factual, standing, comity, and conflict of

16   laws issues, the Court has jurisdiction to grant or deny this motion.  See Fowler v.

17   United States, 258 F. Supp. 638, 644 (C.D. Cal. 1966) (stating that a TRO will not

18   ordinarily be granted if any debate or doubts are created by the record as to the merits

19   of the claimed relief or power of the court to act).

20       For instance, Plaintiffs have sued CMA, and only CMA, and have moved to

21   restrain the company from releasing funds to the receiver or other creditors.  (*Mot. for*

22   *TRO* 2.)  This request necessarily implicates the rights of the receiver and third party

23   creditors not before the Court.  See, e.g., Doe v. Mathews, 420 F. Supp. 865, 870

24   (D.N.J. 1976) (holding that no temporary restraining order can be granted if plaintiff

25   fails to join an indispensable party).  Moreover, any TRO issued could be in direct

26   _____

27   ⁴The Court does not excuse Plaintiffs' hastiness on the fact that Plaintiffs only received
     the Mexican Court's Order on December 13, 2007, which purportedly allows Plaintiffs to step
28   into the shoes of Alissimo/Resinas.  Plaintiffs have not shown that they were unable to get this
     Order any sooner.  Nor have Plaintiffs attached a copy of the Order, translated or otherwise,
     to their moving papers.

07cv2365W

1  contrivance to the forthcoming California Court ruling, and may violate the Anti-

2  Injunction Act. 28 U.S.C. § 2283; see also Hawaii Housing Authority v. Midkiff, 463

3  U.S. 1323, 1325 (1983) (holding that where vital state interests are involved, a federal

4  court should refrain from enjoining an ongoing state judicial proceeding unless

5  extraordinary circumstances exist requiring equitable relief). Simply, in light of all the

6  circumstances surrounding the motion, Plaintiffs' cursory analysis does not satisfy the

7  Court that TRO relief is warranted.

8

9        **B.    Plaintiffs Do Not Show a Likelihood of Success on the Merits**

10       Plaintiffs argue that it is undisputed that CMA owes Alissimo and Resinas, as

11  FlexTrim creditors, a substantial amount of money for goods and services rendered.

12  (*Mot. for TRO* 7.)    However, Plaintiffs are two Mexican labor unions whose

13  constituents merely work for the two Mexican companies, in Mexico.  Besides a

14  Mexican Labor Court ruling giving Plaintiffs preferential rights over Alissimo/Resinas

15  assets, it is unclear under California law whether Plaintiffs may "leapfrog" their

16  employer and assert claims against CMA directly. See Fed. R. Civ. P. 17(a); Allstate

17  Ins. Co. v. Hughes, 358 F.3d 1089, 1093-94 (9th Cir. 2004) (holding that, in a diversity

18  suit, the court must apply substantive state law to determine the real party in interest).

19       Nor do Plaintiffs provide a copy of the Mexican Court's Order, or even cite

20  authority showing that the Mexican Court's Order applies outside the borders of

21  Mexico. In short, Plaintiffs leave many open questions[5] and provide no legal authority

22  for the relief in which they seek.  Thus, they cannot show that they are likely to

23  succeed on the merits.

24  ///

25  ///

26  ///

27  ──────────────────

28       [5]For example, Defendant's opposition raises significant questions over whether Allen
Jones did in fact have control over Alissimo and Resinas, and whether those companies were
represented in the California Court proceeding.  (*Def.'s Opp'n* 4.)

07cv2365W

1  **C.    Plaintiffs Do Not Show Irreparable Injury**

2       Plaintiffs argue that irreparable injury will result if the California Court orders
3  CMA to pay the bulk of FlexTrim's assets to receiver Murphy, thus denying
4  Alissimo/Resinas's claims.  (*Mot. for TRO* 7.)  Plaintiff does not provide any legal
5  authority for this claim.

6       Irreparable harm generally turns upon a substantial injury that is neither
7  accurately measurable or adequately compensable by money damages.  See, e.g., Willms
8  v. Sanderson Cmtys., Inc., No. 07-CV-2366-LKK-GGH, 2007 U.S. Dist. LEXIS 85137,
9  at *4 (E.D. Cal. November 7, 2007) (citing Ross-Simons of Warwick, Inc. v. Baccarat,
10  Inc., 102 F.3d 12, 18 (1st Cir. 1996)).  In this case, Plaintiffs' harm is accurately
11  measurable.  Plaintiffs continuously reference the precise figure of $896,389.81 and
12  their proposed order requests that CMA be restrained from paying out that exact
13  amount, not a penny more or less.  Additionally, it is tough to imagine how Plaintiffs'
14  alleged harm, not being paid, would not be adequately compensated by money
15  damages.  Cf. Phleger v. Countrywide Home Loans, Inc., No. 07-1686 SBA, 2007 U.S.
16  Dist. LEXIS 86413 (N.D. Cal. November 16, 2007) (finding irreparable injury where
17  plaintiff would lose her home to foreclosure auction if court did not grant TRO).

18       Because Plaintiffs do not show a likelihood of success on the merits, do not show
19  irreparable injury, and provide the Court with incomplete facts and law, the Court finds
20  it unnecessary to balance hardships at this time.  From the information before the
21  Court, no public interest factors appear to favor Plaintiffs.  Accordingly, Plaintiffs' *ex*
22  *parte* motion for a temporary restraining order is **DENIED.**

23

24  **IV.    CONCLUSION**

25       From the information currently before the Court, Plaintiffs have not alleged facts
26  and circumstances sufficient to satisfy the requirements needed for a temporary
27  restraining order.  Accordingly, the Court **DENIES** Plaintiffs' Emergency Motion for
28  Temporary Restraining Order.  (Doc. Nos. 4, 5.)  Nothing in this Order shall preclude

1  Plaintiffs or Defendant from moving for or opposing a temporary restraining order,

2  preliminary injunction, or permanent injunction at some future date if circumstances

3  so warrant.

4

5      IT IS SO ORDERED.

6

7  DATED:  December 20, 2007

8                                                          _____
                                                           Hon. Jeffrey T. Miller
9                                                          United States District Judge

10                                                          for Hon. THOMAS J. WHELAN
                                                           United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv2365W